

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 5/23/2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AYLIN GAUGHAN,

        Plaintiff,

-against-

LEE A. RUBENSTEIN,

        Defendant.

16-cv-08062 (PAE) (KHP)

**OPINION, REPORT AND RECOMMENDATION**

**TO: THE HONORABLE PAUL A. ENGELMAYER, United States District Judge**

**FROM: KATHARINE H. PARKER, United States Magistrate Judge**

Plaintiff Aylin Gaughan, proceeding pro se, brings this action against Defendant Lee Rubenstein ("Rubenstein") alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq*., and the New York Labor Law ("NYLL"), breach of contract, disability discrimination, and commission of various common law torts.

Plaintiff now moves for leave to amend the Complaint pursuant to Federal Rule of Civil Procedure 15. Plaintiff's Proposed Third Amended Complaint ("TAC") adds a new defendant, Jennifer Radwan ("Radwan") (collectively with Rubenstein, "Defendants"), and asserts additional facts and causes of action against both Defendants. Both Plaintiff and Radwan also ask the Court to strike certain portions of the record in this action. As set forth herein, this Court recommends that Plaintiff's motion for leave to amend be denied in part. Additionally, as stated below, this Court grants Plaintiff's motion to amend in part , denies Plaintiff's motion to strike, and grants Radwan's request to strike in part.

**BACKGROUND**

*A.  Procedural History*

On October 13, 2016, Plaintiff commenced this action against Rubenstein alleging a number of wage claims under the FLSA and NYLL. (Doc. No. 2.) When construed liberally in light of Plaintiff's pro se status, Plaintiff's 73-page Complaint also appears to assert claims for negligence, unjust enrichment, breach of fiduciary duty, breach of contract, fraud, and discrimination on the basis of disability against Rubenstein.

On January 24, 2017, Rubenstein filed a motion for summary judgment or, alternatively, to dismiss the Complaint in its entirety. (Doc. Nos. 11-17.) Rubenstein argues that Plaintiff's claims are barred by a prior settlement agreement in which Plaintiff released all claims against him and that the Complaint otherwise fails to state a claim. Plaintiff opposed Rubenstein's motion on February 8, 2017. (Doc. Nos. 18-19.) This motion is currently pending.

On February 21, 2017, Plaintiff filed a motion for leave to amend the Complaint. (Doc. Nos. 20-21.) Plaintiff's Proposed Amended Complaint asserted new facts and causes of action against Rubenstein, and also sought to add a new defendant, Radwan. On March 10, 2017, Radwan submitted an affirmation in opposition to Plaintiff's motion for leave to amend. (Doc. No. 27; *see also* Doc. No. 29.) Radwan argues that Plaintiff should not be permitted to amend the Complaint to add her as a defendant because Plaintiff cannot state a federal cause of action against her. Therefore, Radwan contends, amendment would be futile. As an alternative, if amendment is allowed, Radwan asks the Court to strike certain irrelevant and personally embarrassing allegations recited in Plaintiff's Proposed Amended Complaint.

On March 21, 2017, Plaintiff filed a second motion for leave to amend the Complaint

and proffered the TAC. (Doc. Nos. 33-34.) No second amended complaint was ever filed. Because the TAC represents the most recent proposed amended pleading, it supersedes the previously proffered pleading and is the pleading addressed in this decision.

The TAC asserts all of the same claims as the initial Complaint, but also adds Radwan as a defendant and advances new causes of action against Defendants. Although the 87-page TAC is far from a model of clarity, Plaintiff appears to seek leave to assert the following new claims that were not alleged in the Complaint:

- retaliation and hostile work environment in violation of Title VII, 42 U.S.C. § 2000e-2, against both Defendants;
- discrimination on the basis of disability in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, against Radwan;
- retaliation and hostile work environment in violation of the New York State Human Rights Law ("NYSHRL") and New York City Human Rights Law ("NYCHRL") against both Defendants;
- discrimination on the basis of disability in violation of the NYSHRL and NYCHRL against Radwan;
- intentional infliction of emotional distress against both Defendants;
- retaliation in violation of the FLSA and NYLL against both Defendants;
- violations of the FLSA and NYLL against Radwan, including for unpaid minimum wage, unpaid overtime compensation, unpaid spread-of-hours compensation, recordkeeping and notice violations, failure to make timely wage payments, and for holiday, sick, and vacation pay;
- fraud against Radwan; and
- tortious interference with contract against Rubenstein.

Plaintiff's March 21, 2017 motion also summarily requests that the Court strike all of Radwan's submissions to the Court pursuant to Federal Rule of Civil Procedure 12(f). Neither Rubenstein nor Radwan filed an opposition to Plaintiff's March 21, 2017 motion for leave to amend, but this Court has considered points raised by Radwan in her March 10 submission in reaching its decisions herein.

### B. Allegations In The TAC[1]

Rubenstein is the "owner, principle and manager of The Law Office of Lee A. Rubenstein." (TAC ¶ 12.) Plaintiff worked for Rubenstein in an administrative/paralegal capacity from approximately June or July 2013 to July 2015. (TAC ¶¶ 32, 243; *see also* Doc. No. 18, ¶ 4.) Rubenstein also served as Plaintiff's lawyer in connection with two legal proceedings. (TAC ¶¶ 22, 32.) Rubenstein and Radwan share an office suite, along with at least one other attorney. Radwan performs some work as an associate for Rubenstein's law practice, but also maintains her own separate private practice. (TAC ¶¶ 305-06.) Radwan contributes to the rent for the office suite and other office expenses. (TAC ¶ 306.)

During the course of Plaintiff's employment, she worked for Rubenstein's and Radwan's joint practice, as well as for their separate private practices. For Rubenstein, Plaintiff's work included: listening to CLE courses in the evenings (TAC ¶ 83), typing discovery requests (TAC ¶¶ 430-32), paying his bills (TAC ¶ 97), taking notes in court (TAC ¶ 270), escorting his children around New York City (TAC ¶¶ 164, 179, 181, 301), and a variety of other tasks. Plaintiff served subpoenas and delivered documents in inclement weather, at night, and under other dangerous circumstances. (TAC ¶¶ 90-94, 101, 119-20, 199-205.) Rubenstein did not ask his son, who worked in the office as a receptionist for a period of time, to perform similar tasks. (TAC ¶¶ 178-82, 425.)

Plaintiff's work for Radwan included making copies, delivering documents, witnessing the signing of wills, writing and re-writing notes to file about Plaintiff's observations during will signings, relaying Radwan's telephone messages, interacting with Radwan's clients, and filing

---

[1] Given the length of the TAC, this Court only summarizes the allegations relevant to the new claims Plaintiff seeks

papers with the court, among other tasks. (TAC ¶¶ 99, 307, 310, 316-18, 386-87, 406, 414, 486.) Radwan also represented to her personal clients that Plaintiff was her assistant. (TAC ¶ 415.) Plaintiff alleges that neither Rubenstein nor Radwan compensated her for the work she performed for Radwan.

Although Rubenstein told Plaintiff upon hire that she would be paid $17.50 per hour (TAC ¶ 37; *see also* Doc. No. 2, Ex. A), she was only paid $3.57 per hour in 2013 (TAC ¶ 37); approximately $4.16 per hour in 2014 (TAC ¶ 42); and $6.25 per hour in 2015. (TAC ¶ 44.) At various times, Plaintiff worked for Defendants six or seven days per week and for 10- to 14-hours per day, which included late nights, weekends, and holidays. (TAC ¶¶ 38, 42, 89, 96, 102, 132, 169, 174-75, 287, 405, 421, 432.) Plaintiff contends she was "frequently not allowed to take a full 30-minute uninterrupted lunch break." (TAC ¶ 96.) Plaintiff asserts she did not receive overtime pay, spread-of-hours compensation, holiday pay or other paid time off throughout the entirety of her employment. (TAC ¶¶ 38, 39, 45.) Rubenstein also allegedly failed to pay Plaintiff in a timely manner, including by withholding her paychecks or forward-dating the checks so they could not be immediately cashed. (TAC ¶¶ 45, 105, 128, 185-88, 191, 243-44, 408.)

Plaintiff complained to Radwan, Rubenstein, and others about her unlawful wages and untimely paychecks, but her complaints were ignored. (TAC ¶ 444, 128, 185, 382.) Based upon the number of hours that Plaintiff worked and using the agreed-upon straight-time rate of $17.50 per hour, Plaintiff claims she should have been paid $78,890, inclusive of overtime compensation, over the duration of her employment, but that she only was paid $20,600. (TAC

to add to this action.

¶¶ 71, 73.)

Plaintiff also asserts that Defendants failed to provide her with wage notices or statements upon hire or at any other point during her employment, and failed to keep proper records regarding her employment. (TAC ¶¶ 47, 58, 60, 64, 241, 247.) According to Plaintiff, Defendants misclassified and misrepresented Plaintiff's employment to various governmental agencies, including the Internal Revenue Service and New York Workers' Compensation Board. (TAC ¶¶ 67-68, 477, 482, 484.) As a result, Plaintiff did not receive workers' compensation, unemployment, or disability benefits. (TAC ¶ 485.)

In addition, Plaintiff complains that Defendants were often rude to her and mistreated her in a variety of other ways, including, *inter alia*:

- Rubenstein failed to maintain a sanitary office environment. As a result, Plaintiff, who suffers from a compromised immune system and other disabilities, was forced to endanger her health by working in a "toxic and hazardous environment" with a "constant dead mouse smell." (TAC ¶¶ 139, 23-24, 90, 93.) Plaintiff complained about this environment to Radwan, Rubenstein, and other tenants of the office suite (TAC ¶¶ 143, 444);

- In 2013, Rubenstein told Plaintiff that he was attracted to her during a phone call (TAC ¶ 264);

- Rubenstein told Plaintiff that Radwan was the "smart one" whereas Plaintiff was the "pretty one," and, as such, he relied on Plaintiff to use her looks to carry out certain tasks, such as serving subpoenas, obtaining sealed files, or appearing with him in court in front of male jurists (TAC ¶ 275);

- Rubenstein asked her to use her "feminine wiles" to obtain information from court personnel on numerous occasions (TAC ¶ 295);

- Rubenstein came to Plaintiff's home when she was sick and refused to leave, despite Plaintiff hinting that she wanted to rest (TAC ¶¶ 322-27);

- Radwan grabbed Plaintiff's cell phone out of Plaintiff's hand in court, which caused a fight between Radwan and Plaintiff (TAC ¶¶ 337-42);

- Radwan sometimes yelled for Plaintiff to come into her office rather than walk over to her to speak (TAC ¶¶ 353-55); and

- On one occasion, Radwan stepped into the office where Plaintiff was working,

closed the door, and "aggressively invaded Plaintiff's space" to insist that they speak (TAC ¶¶ 361-68);

- Radwan complained that Rubenstein's files were encroaching her work space and told Plaintiff to move the heavy files, even though Radwan knew that Plaintiff suffered from physical limitations. (TAC ¶ 355.)

On June 18, 2015, Plaintiff and Rubenstein got into an argument after Plaintiff's personal computer was damaged by a corrupt file Rubenstein had asked her to load. (TAC ¶¶ 214-18.) During this argument, Rubenstein told Plaintiff that he no longer trusted her and was terminating her employment. (TAC ¶ 219.) Rubenstein also said that he blamed Plaintiff for the fact that he was named as a third-party defendant in a legal malpractice suit. (TAC ¶ 447.) On Plaintiff's last day of employment, July 31, 2015, Rubenstein paid Plaintiff in two checks, but instructed her that she could not cash them immediately and dated them for five days in the future. (TAC ¶ 243.) Rubenstein refused to give Plaintiff a third check for additional amounts owed. (TAC ¶¶ 243-44, 249-50, 452.)

After Plaintiff's termination, Rubenstein approached Andrew Hoffman, an attorney who shared office space with Defendants and also represented Plaintiff in a malpractice action, for legal advice regarding Plaintiff's threatened wage-and-hour claims. (TAC ¶ 453.) Hoffman subsequently told Plaintiff that he could no longer represent her due to the tension created by Rubenstein approaching him in the office. (TAC ¶ 453.) Another attorney representing Plaintiff in a legal malpractice action also withdrew as counsel after Rubenstein's counsel contacted the attorney and told him that representing Plaintiff may result in a malpractice action against him. (TAC ¶ 460.)

<u>**DISCUSSION**</u>

**I.   LEGAL STANDARD**

**A.  Motion to Amend**

Under Rule 15(a) of the Federal Rules of Civil Procedure, "a party may amend its pleading once as a matter of course within . . . 21 days after serving it, or . . . if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." FED. R. CIV. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." FED. R. CIV. P. 15(a)(2). The Second Circuit has stated that "[t]his permissive standard is consistent with our strong preference for resolving disputes on the merits." *Williams v. Citigroup Inc.*, 659 F.3d 208, 212-13 (2d Cir. 2011) (internal quotations and citation omitted).

Leave to amend should be given "absent evidence of undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party, or futility." *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 283 (2d Cir. 2000). Proposed amendments are futile when they would fail to "state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *IBEW Local Union No. 58 Pension Trust Fund & Annuity Fund v. Royal Bank of Scotland Grp., PLC*, 783 F.3d 383, 389 (2d Cir. 2015) (quoting *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012)). Because determination of futility is subject to the same standards as a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "[f]utility is generally adjudicated without resort to any outside evidence." *Wingate v. Gives*, No. 05-cv-1872 (LAK) (DF), 2009 WL 424359, at *5 (S.D.N.Y. Feb. 13, 2009) (citing *Nettis v. Levitt*, 241 F.3d

186, 194, n.4 (2d Cir. 2001)).

In assessing whether a plaintiff has stated a claim under Rule 12(b)(6), a court must accept all factual allegations in the complaint as true and draw all inferences in the plaintiff's favor. *Cruz v. Beto*, 405 U.S. 319, 322 (1972); *Littlejohn v. City of New York*, 795 F.3d 297, 306 (2d Cir. 2015). To survive a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While detailed factual allegations are not required, the complaint must contain more than mere "labels and conclusions." *Id*. It must contain more than "naked assertion[s] devoid of further factual enhancement." *Id.* (citation omitted). And, it must contain more than a "formulaic recitation of the elements of a cause of action." *Id*. As the U.S. Supreme Court explained in *Ashcroft v. Iqbal*, the "plausibility standard" asks for "more than a sheer possibility that a defendant has acted unlawfully." *Id*.

This same pleading standard applies to both counseled and pro se complaints. *See Legeno v. Corcoran Grp.*, 308 F. App'x 495, 496 (2d Cir. 2009); *Jenkins v. N.Y.C. Dep't of Educ.*, No. 10-cv-6159 (BSJ) (THK), 2011 WL 5451711, at *3 (S.D.N.Y. Nov. 9, 2011) (pro se status "does not . . . excuse a plaintiff from compliance with the pleading standards of the Federal Rules of Civil Procedure"). However, a pro se plaintiff's complaint must be construed liberally, *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011), and interpreted as raising the strongest arguments it suggests. *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006); *see also Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010).

**B. Motion to Strike**

Under Federal Rule of Civil Procedure 12(f), court may "strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f). "Federal courts have discretion in deciding whether to grant motions to strike." *Orientview Techs. LLC v. Seven For All Mankind, LLC*, No. 13-cv-0538 (PAE), 2013 WL 4016302, at *3 (S.D.N.Y. Aug. 7, 2013) (quoting *Allocco v. Dow Jones & Co., Inc.*, No. 02-cv-1029 (LMM), 2002 WL 1484400, at *1 (S.D.N.Y. July 10, 2002)). However, "courts should not tamper with the pleadings unless there is a strong reason for so doing," and should not ordinarily "strike a portion of the complaint on the grounds that the material could not possibly be relevant on the sterile field of the pleadings alone." *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976).

Thus, a court will not strike matter from a pleading unless it is satisfied that: "(1) no evidence in support of the allegations would be admissible; (2) the allegations have no bearing on the relevant issues; and (3) permitting the allegations to stand would result in prejudice to the movant." *Schoolcraft v. City of New York*, 299 F.R.D. 65, 67 (S.D.N.Y. 2014). For example, a pleading may be stricken, under appropriate circumstances, if "the pleading is obviously insufficient as a matter of law, or the severity of the prejudice outweighs the materiality of the allegation." *Orientview Techs. LLC*, 2013 WL 4016302, at *3. "[I]t is not enough that the matter offends the sensibilities of the objecting party if the challenged allegations describe acts or events that are relevant to the action." *Schoolcraft*, 299 F.R.D. at 67 (quoting 5C FED. PRAC. & PROC. CIV. § 1382 (3d ed. 2011)).

II.     **PLAINTIFF'S MOTION FOR LEAVE TO AMEND THE COMPLAINT**

Plaintiff seeks leave to amend her Complaint to assert an array of new claims against Rubenstein, Radwan, or both Defendants jointly. Plaintiff argues that amendment should be permitted under the liberal Rule 15 standard because her request to amend was made in a timely manner, Defendants will not be prejudiced by amendment, and amendment is not futile. Defendants apparently concede that Plaintiff's proposed amendments are not untimely or prejudicial. And while Radwan summarily argues that amendment would be futile as to the federal claims that Plaintiff seeks to advance against her, Defendants have not meaningfully addressed whether the majority of the new claims asserted in the TAC plausibly state a claim for relief. Nevertheless, because the Court has the inherent authority to dismiss meritless claims *sua sponte*, this Court has assessed whether amendment would be futile as to each new claim that Plaintiff seeks to add in the TAC. *Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 364 (2d Cir. 2000) (per curiam).

### A.  Title VII And ADA Claims

The TAC seeks to add claims of retaliation and hostile work environment in violation of Title VII against both Defendants. The TAC also appears to assert a new claim for disability discrimination under the ADA against Radwan.[2]

Plaintiff cannot state a claim against Defendants under either Title VII or the ADA because neither statute provides for individual liability. *See, e.g., Tomka v. Seiler Corp.*, 66 F.3d

---

[2] When the allegations in Plaintiff's initial Complaint are read liberally in light of her pro se status, the Complaint can be reasonably construed as asserting a claim against Rubenstein for disability discrimination in violation of the ADA, the NYSHRL, and the NYCHRL. Accordingly, this Court does not address the merits of Plaintiff's claims for discrimination on the basis of disability against Rubenstein in connection with the instant motion to amend except to note that the ADA does not recognize individual liability.

1295, 1313-14 (2d Cir. 1995), *abrogated on other grounds by Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998); *Darcy v. Lippman*, 356 F. App'x 434, 436-37 (2d Cir. 2009) (noting that Title VII does not create causes of action against individual supervisors); *Castagna v. Luceno*, No. 09-cv-9332 (CS), 2011 WL 1584593, at *10 (S.D.N.Y. Apr. 26, 2011) (dismissing Title VII claims against company president); *Gomez v. N.Y.C. Police Dep't*, 191 F. Supp. 3d 293, 302-03 (S.D.N.Y. 2016) (holding that there is no individual liability under Title VII or the ADA).

Radwan also argues that Plaintiff cannot state a claim under Title VII or the ADA because Plaintiff failed to exhaust her administrative remedies. A plaintiff is required to file a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") and state or local equivalent before bringing Title VII or ADA claims in federal court. *See* 42 U.S.C. § 2000e-5(c)-(e); 42 U.S.C. § 12117(a); *see also Gomez*, 191 F. Supp. 3d at 299. Such a claim must be brought within 300 days of an adverse employment action. 42 U.S.C. § 2000e-5(e). Although a plaintiff is not required to explicitly demonstrate exhaustion at the pleading stage, *DiPetto v. U.S. Postal Serv.*, 383 F. App'x 102, 104 (2d Cir. 2010), a claim will not withstand a motion to dismiss if it is clear from the face of the complaint that a plaintiff has not exhausted her administrative remedies. *See Gomez,* 191 F. Supp. 3d at 299; *Arnold v. Research Found. for the State Univ. of N.Y.*, No. 15-cv-05971 (ADS) (SIL), 2016 WL 6126314, at *8 (E.D.N.Y. Oct. 20, 2016). Here, Plaintiff does not allege that she filed a charge of discrimination with the EEOC, the New York State Division of Human Rights or the New York City Commission on Human Rights; nor does she dispute Radwan's assertion that her Title VII and ADA claims are unexhausted. Thus, Plaintiff's request to amend the Complaint to add claims under Title VII and the ADA also appears to be futile on the grounds that such claims are unexhausted. Further, because

Plaintiff's employment ended in July 2015, any claim filed with the EEOC would be time-barred.

Accordingly, the Court recommends that Plaintiff's motion to amend the Complaint to add claims under Title VII and the ADA be denied with prejudice.

**B.   Hostile Work Environment Under The NYSHRL And NYCHRL Against Both Defendants**

The TAC appears to allege that both Defendants subjected Plaintiff to a hostile work environment in violation of the NYSHRL and NYCHRL.

To state a claim for hostile work environment under the NYSHRL, a plaintiff must establish that "her workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Lenart v. Coach, Inc.*, 131 F. Supp. 3d 61, 66 (S.D.N.Y. 2015) (quoting *Redd v. N.Y. Div. of Parole*, 678 F.3d 166, 175 (2d Cir. 2012)). In determining whether a plaintiff meets the "severe or pervasive" standard, courts must consider the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with the plaintiff's job performance. *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 745 (2d Cir. 2003) (quotation marks omitted). "As a general rule, incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Alfano v. Costello,* 294 F.3d 365, 374 (2d Cir. 2002).

The standard for maintaining a hostile work environment claim is lower under the NYCHRL than under the NYSHRL and Title VII. This is because the NYCHRL was intended to be more protective than its state and federal analogs. *Farrugia v. N. Shore Univ. Hosp.*, 13 Misc.3d 740, 747 (N.Y. Sup. Ct., N.Y. Cnty., 2006). Under the NYCHRL, a plaintiff need not demonstrate

that the treatment was "severe or pervasive" to demonstrate a hostile work environment. *Williams v. N.Y.C. Hous. Auth.*, 61 A.D.3d 62, 73-78 (1st Dep't 2009). Instead, a plaintiff need only show that she has been treated "less well" than other employees because of a protected characteristic. *Id.* at 78. Under both the NYSHRL and NYCHRL, the plaintiff must allege some facts to support the inference that the hostile treatment was due to a protected characteristic. *See id; Lenart*, 131 F. Supp. 3d at 67-68 (collecting cases).

### 1. *Plaintiff's Hostile Work Environment Claims Against Rubenstein*

In support of her hostile work environment claim against Rubenstein, Plaintiff alleges that he: (i) told Plaintiff that he was attracted to her on one occasion over the phone (TAC ¶ 264); (ii) stated that Radwan was the "smart one" and Plaintiff was the "pretty one" and, as such, relied on Plaintiff to perform tasks where she could use her appearance to gain an advantage, such as by accompanying Rubenstein to court when he was appearing in front of a male jurist (TAC ¶ 275); (iii) frequently asked Plaintiff to use her "feminine wiles" to obtain information from court personnel (TAC ¶ 295); and (iv) came to her home uninvited to bring her food when she was sick and refused to leave, despite her hints that she wanted to rest. (TAC ¶¶ 322-24.) The TAC also alleges that Rubenstein demanded Plaintiff perform tasks that she deemed to be inappropriate, such as delivering and serving documents under potentially dangerous conditions, forcing her to work late nights, weekends and holidays, and requiring her to escort Rubenstein's children around New York City. Plaintiff contends that Rubenstein did not ask his son, who also worked in the office during breaks from college, to perform these types of tasks. Plaintiff further alleges that Rubenstein was rude and yelled at her and others on numerous occasions.

14

These allegations are insufficient to support an inference that Plaintiff faced discriminatory harassment "of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse." *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (internal quotation omitted). While Plaintiff's allegations portray Rubenstein as a demanding boss, the facts set forth in the TAC do not support the inference that the majority of the complained-of conduct was motivated by Plaintiff's gender or any other protected trait. *See Lenart*, 131 F. Supp. 3d at 67-68 (holding that a plaintiff must establish that the conduct giving rise to the hostile environment occurred because of a protected characteristic); *Boonmalert v. City of New York*, No. 16-cv-4171 (KMW) (KNF), 2017 WL 1378274, at *6 (S.D.N.Y. Apr. 12, 2017) (same). The TAC actually attributes a number of other, non-discriminatory motives to Rubenstein's conduct, including that he asked Plaintiff to deliver documents because he was too frugal to hire a courier. (*See* TAC ¶ 189.)

Only the four allegations summarized above—out of myriad allegations—could conceivably be construed as touching upon Plaintiff's gender, and this Court finds that those allegations are insufficient to state a hostile work environment claim under the NYSHRL. First, none of the alleged incidents are sufficiently severe to create an objectively hostile environment. *See, e.g., Petrosino v. Bell Atl.,* 385 F.3d 210, 223 (2d Cir. 2004) ("Simple teasing, offhand comments, or isolated incidents of offensive conduct (unless extremely serious) will not support a claim of discriminatory harassment."); *Brown v. Coach Stores*, 163 F.3d 706, 713 (2d Cir. 1998) (holding that occasional racist remarks by a supervisor, including one directed at plaintiff, did not create a hostile work environment). Nor has Plaintiff alleged that the acts were "sufficiently continuous and concerted . . . to be deemed pervasive." *Alfano*, 294 F.3d at 374.

Even when all of Plaintiff's allegations are viewed as a whole, they fall significantly short of the type of conduct that courts have found "sufficiently severe or pervasive to alter the conditions of the victim's employment" for purposes of stating a claim under the NYSHRL. *See id.* at 373, 379-80; *Mendez-Nouel v. Gucci Am., Inc.*, No. 10-cv-3388 (PAE), 2012 WL 5451189, at *9-11 (S.D.N.Y. Nov. 8, 2012) ("The episodes [plaintiff] complains of are simply too episodic, insufficiently serious, and, most important, insufficiently tied to his gender or sexual orientation, to have materially altered the conditions of [plaintiff's] employment on the basis of any protected classification."), *aff'd*, 542 F. App'x 12 (2d Cir. 2013); *LaSalle v. City of New York*, No. 13-cv-5109 (PAC), 2015 WL 1442376, at *1, 7 (S.D.N.Y. Mar. 30, 2015) (granting a motion to dismiss a hostile work environment claim where plaintiff alleged that supervisors "habitual[ly]" called her a "bitch" and used other derogatory and sexist names towards her).

Under the more lenient NYCHRL standard, however, Plaintiff's allegations are sufficient—though just barely—to plausibly state a claim for hostile work environment. Although Plaintiff does not explicitly allege that she was treated less well than other employees, she does assert that Rubenstein demanded that she serve subpoenas and deliver documents under dangerous conditions, but that he did not ask a male employee who also worked in an assistant capacity—his son—to carry out similar tasks. (TAC ¶ 425.) This allegation, coupled with Rubenstein's alleged remarks about Plaintiff's appearance and using her femininity to successfully carry out certain job responsibilities, creates a minimal inference that Plaintiff was subject to differential treatment on the basis of her gender. *See Williams v. Rosenblatt Secs. Inc.*, No. 14-cv-4390 (JGK), 2016 WL 4120654, at *4 (S.D.N.Y. July 22, 2016). To be sure, discovery may reveal that Plaintiff's allegations ultimately amount to "trivial inconveniences"

that are not actionable under the NYCHRL; but, at the pleading stage, the Court cannot conclude that Plaintiff has failed to state a claim as a matter of law.

Accordingly, this Court recommends that Plaintiff's request to add a hostile work environment claim under the NYSHRL against Rubenstein be denied. This Court grants Plaintiff's motion to amend the Complaint to assert a hostile work environment claim in violation of the NYCHRL against Rubenstein.

### 2.   *Plaintiff's Hostile Work Environment Claims Against Radwan*

Plaintiff's hostile work environment claims against Radwan are premised on allegations that Radwan: (i) grabbed Plaintiff's cellphone out of Plaintiff's hand and caused a scene in court (TAC ¶¶ 335-42); (ii) yelled for Plaintiff when she wanted her attention (TAC ¶¶ 353-55); (iii) "aggressively invaded Plaintiff's personal space" and insisted that they talk about a will signing that Plaintiff had witnessed (TAC ¶¶ 358-68); (iv) reworded Plaintiff's description of a testator's state of mind as part of a note to file (TAC ¶¶ 386-87); and (v) got upset with Plaintiff or acted rudely towards her at various times.

These allegations are insufficient to plausibly state a claim for hostile work environment under the NYSHRL because Plaintiff fails to tie these actions to her gender or any other protected characteristic. The TAC does not set forth any basis upon which it even could be inferred that Radwan's conduct was motivated by a discriminatory animus. *See Feliciano v. City of New York*, No. 14-cv-6751 (PAE), 2015 WL 4393163, at *14 (S.D.N.Y. July 15, 2015); *Carter v. Verizon*, No. 13-cv-7579 (KPF), 2015 WL 247344, at *10-12 (S.D.N.Y. Jan. 20, 2015). At best, Plaintiff's allegations express her frustrations and annoyances with Radwan as a supervisor, but such grievances do not give rise to an actionable claim. *See Alfano*, 294 F.3d at 377 ("Everyone

can be characterized by sex, race, ethnicity, or (real or perceived) disability; and many bosses are harsh, unjust, and rude. It is therefore important in hostile work environment cases to exclude from consideration personnel decisions that lack a linkage or correlation to the claimed ground of discrimination. Otherwise, the federal courts will become a court of personnel appeals."). Moreover, even if Plaintiff had adduced evidence of a discriminatory motive, the complained-of conduct would nevertheless fail to meet the requisite level of "pervasiveness, ridicule, or intimidation necessary to create a hostile work environment" under the NYSHRL. *Feliciano*, 2015 WL 4393163, at *14 (quoting *Mendez-Nouel*, 2012 WL 5451189, at *10); *see also Littlejohn*, 795 F.3d at 321 (allegations that a supervisor made negative statements about plaintiff, was impatient and used harsh tones with plaintiff, and wrongfully reprimanded plaintiff, *inter alia*, did not state a claim for hostile work environment).

For the same reason, Plaintiff has failed to plead a colorable claim for hostile work environment under the NYCHRL against Radwan. While the NYCHRL is more lenient than its state law counterpart, it "is not a general civility code, and a defendant is not liable if the plaintiff fails to prove the conduct is caused at least in part by discriminatory or retaliatory motives." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 113 (2d Cir. 2013) (internal citations omitted); *see also Feliciano*, 2015 WL 4393163, at *14; *Williams*, 872 N.Y.S.2d at 39-40 (core issue in NYCHRL discrimination claims is whether a plaintiff has been treated differently based on a protected characteristic). Plaintiff's complaints that Radwan was overbearing and rude towards her are, at most, "petty slights and trivial inconveniences" that cannot create a hostile work environment, particularly when there is no evidence of a discriminatory motive. *Mihalik*, 715 F.3d at 110-11. Accordingly, the Court recommends that

Plaintiff's request to add hostile work environment claims against Radwan be denied.

**C. Retaliation Under The NYSHRL And NYCHRL Against Both Defendants**

Plaintiff appears to allege in the TAC that Defendants retaliated against her in violation of the NYSHRL and NYCHRL. To state a prima facie retaliation claim under the NYSHRL, Plaintiff must show: "[i] participation in a protected activity known to the defendant; [ii] an employment action disadvantaging the plaintiff; and [iii] a causal connection between the protected activity and the adverse employment action." *Anderson v. Davis Polk & Wardwell LLP*, 850 F. Supp. 2d 392, 413 (S.D.N.Y. 2012). The elements of a prima facie retaliation claim under the NYCHRL differ only in that a plaintiff need not prove any adverse employment action. Instead, Plaintiff must prove that something happened that would be reasonably likely to deter a person from engaging in a protected activity. *Mayers v. Emigrant Bancorp, Inc*., 796 F. Supp. 2d 434, 446 (S.D.N.Y. 2011); *Feliciano*, 2015 WL 4393163, at *8.

Under both the NYSHRL and NYCHRL, "protected activity" includes any "action taken to protest or oppose statutorily prohibited discrimination." *Fernandez v. Windmill Distrib. Co.*, 159 F. Supp. 3d 351, 367 (S.D.N.Y. 2016) (internal quotation marks omitted); *see also Mayers*, 796 F. Supp. 2d at 448. "An employee engages in a protected activity when [she] complains of an employment practice that [she] reasonably believes violates the law." *Fernandez*, 159 F. Supp. 3d at 367. If it is not readily apparent that the employee is complaining about discrimination, "[t]he onus is on the speaker to clarify to the employer that [she] is complaining of unfair treatment due to [her] membership in a protected class and that [she] is not complaining merely of unfair treatment generally." *Mayers*, 796 F. Supp. 2d at 448 (citation omitted).

The NYSHRL and NYCHRL also require that a plaintiff "plausibly plead a connection

between the act and [her] engagement in protected activity." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015); *see also Anderson*, 850 F. Supp. 2d at 413 (dismissing claims under NYSHRL and NYCHRL where allegations did not raise any inference of causation). A plaintiff can demonstrate a causal connection "(a) indirectly by showing that the protected activity was followed closely by discriminatory treatment; (b) indirectly through other evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (c) directly through evidence of retaliatory animus." *LaSalle*, 2015 WL 1442376, at *6 (internal citation omitted).

The TAC is unclear as to what Plaintiff's protected activity was. The TAC alleges that Defendants retaliated against her after she complained to Radwan, Hoffman, and other occupants of the office suite about the unsanitary conditions of Rubenstein's office, which she claims compromised her health and safety. (TAC ¶¶ 444, 449.) Plaintiff also appears to allege that she complained to Rubenstein that the "toxic hoarding environment with the constant dead mouse smell" negatively affected her health and already-compromised immune system. (TAC ¶¶ 142-44.) But, "in order for a complaint to form the basis of a retaliation claim . . . the employer must have understood, or could reasonably have understood, that the plaintiff's opposition was directed at conduct prohibited by the employment discrimination laws." *Mayers*, 796 F. Supp. 2d at 448 (internal quotations and citation omitted). Plaintiff's complaints about mess and odors in the office, without more, are insufficient to put Defendants on notice

that she was complaining about conduct prohibited by the anti-discrimination laws.[3] *See id.* (collecting cases).

Even assuming, *arguendo*, that Plaintiff's complaints constitute protected activity, the TAC does not assert facts to establish a causal connection between her protected activity and any negative consequence. Plaintiff has not alleged any direct evidence of a retaliatory motive, nor has she recited any facts that would support an inference causation, such as by showing a close temporal proximity between the protected activity and Plaintiff's eventual termination. *See Feliciano*, 2015 WL 4393163, at *9. In fact, the TAC is silent as to when Plaintiff complained about the unsanitary office environment or how many times she complained. *See id.* (holding that it is "impossible for the Court to determine the temporal proximity of the alleged retaliatory acts to the protected conduct" when the plaintiff fails to allege dates). Aside from Plaintiff's assertion that Defendants retaliated against her for complaining about perceived health hazards—which is too conclusory to be considered—there is nothing in the TAC that links her protected activity to any negative consequences. Thus, Plaintiff has failed to plead facts to support an inference of causation, a requisite element to a retaliation claim under both the NYSHRL and NYCHRL. *See Taylor v. City of New York*, 207 F. Supp. 3d 293, 308-09 (S.D.N.Y. 2016) (explaining that even under the broader NYCHRL retaliation provision, a "plaintiff must

---

[3] To the extent Plaintiff's complaints about office sanitation are construed as requests for a reasonable accommodation for her compromised immune system, Plaintiff still has not stated a claim for retaliation because "a retaliation claim cannot be based on the same conduct that comprises a failure-to-accommodate claim." *Scott-Robinson v. City of New York*, No. 15-cv-9703 (NRB), 2016 WL 7378775, at *3 (S.D.N.Y. Dec. 15, 2016). Moreover, to the extent Plaintiff intends to state a claim for unsafe working conditions under the Occupational Safety and Health Act ("OSHA"), 29 U.S.C. §§ 651 *et seq.*, OSHA does not provide for a private right of action for employees in federal court. *Jacobsen v. N.Y.C. Health & Hosps. Corp.*, No. 12-cv-7460 (JPO), 2013 WL 4565037, at *7-8 (S.D.N.Y. Aug. 28, 2013) (collecting cases); *see also Jones v. Staten Island Univ. Hosp.*, No. 04-cv-3302 (JG), 2006 WL 2713987, at *1-2 (E.D.N.Y. Sept. 22, 2006) ("neither an OSHA violation nor retaliation against an employee for complaining of such a violation will support a cause of action under OSHA by the affected employee.").

still plead some facts that her employers' actions disadvantaged her and that the action was connected to her protected activity.") As a result, this Court recommends denying Plaintiff's motion for leave to amend to add claims for retaliation in violation of the NYSHRL and NYCHRL.

### D. Disability Discrimination Under The NYSHRL And NYCHRL Against Radwan

When broadly construed, the TAC arguably asserts a disability discrimination claim against Radwan for failure to accommodate Plaintiff's disabilities. To establish a prima facie failure to accommodate claim under the NYCHRL and NYCHRL, a plaintiff must demonstrate that: "(1) plaintiff is a person with a disability under the meaning of [the relevant statute]; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." *Nieblas-Love v. N.Y.C. Hous. Auth.*, 165 F. Supp. 3d 51, 73 (S.D.N.Y. 2016). An employer is required to engage in an interactive process upon notice of the need for an accommodation. *Romanello v. Intesa Sanpaolo S.p.A.*, 97 A.D.3d 449, 451 (1st Dep't 2012).

The only allegations Plaintiff makes in ostensible support of her failure-to-accommodate claim against Radwan are that: (i) Radwan was aware of Plaintiff's disabilities, specifically, "Plaintiff's intolerance to the cold due to autoimmune disease and cancer and that at times Plaintiff became winded and exhausted due to not being able to get enough oxygen due to the severed vocal cord not moving" (TAC ¶ 315); and (ii) Radwan directed Plaintiff "to move [Rubenstein's] heavy files despite Plaintiff's physical limitations and Ms. Radwan [being] more than capable of moving the files herself." (TAC ¶ 355.)

These barebones assertions are insufficient to state a claim for failure to accommodate

under the NYSHRL or NYCHRL. First, the TAC is silent as to whether Plaintiff's alleged disabilities affected her ability to move files in the office. In other words, Plaintiff has failed to plead facts establishing that she required a reasonable accommodation due to her disabilities in order to carry out the requested task. Additionally, while the TAC states that Radwan was generally aware that Plaintiff suffered from certain medical conditions, Plaintiff does not allege that she ever asked Radwan for a disability accommodation or that Radwan otherwise knew Plaintiff's disabilities necessitated an accommodation in order for Plaintiff to move files. *See MacEntee v. IBM*, 783 F. Supp. 2d 434, 443 (S.D.N.Y. 2011) (it is "the employee's responsibility to demonstrate to an employer that she needs an accommodation for reasons related to a medical condition disability"). Furthermore, the TAC also does not allege that Radwan ever denied Plaintiff a reasonable accommodation. *See Graham v. Macy's Inc.*, No. 14-cv-3192 (PAE), 2015 WL 1413643, at *3 (S.D.N.Y. Mar. 23, 2015) (granting motion to dismiss failure to accommodate claims where the "[c]omplaint does not identify when, if ever, Graham notified Macy's of her disability. Similarly, it does not allege that Graham asked Macy's for accommodations, or that Macy's refused her request."); *MacEntee*, 783 F. Supp. 2d at 444 ("Defendants cannot be held liable for failing to provide reasonable accommodations when it had no actual or constructive knowledge of the need for any accommodations"). Accordingly, this Court recommends that Plaintiff's request to amend her Complaint to add a claim for disability discrimination against Radwan be denied.

### E. Retaliation Under The FLSA And NYLL Against Both Defendants

Plaintiff next seeks to amend the Complaint to assert a claim for retaliation in violation of the FLSA and NYLL. The FLSA prohibits employers from discharging or otherwise

discriminating against any employee "because such employee has filed any complaint . . . under or related to this chapter." 29 U.S.C. § 215(a)(3). The NYLL similarly provides that an employer shall not discharge, threaten, penalize or otherwise discriminate against an employee because she "has made a complaint to his or her employer . . . that the employer has engaged in conduct that the employee, reasonably and in good faith, believes violates any provision" of the NYLL. N.Y. LAB. L. § 215(a)(1). Thus, to state a retaliation claim under the FLSA and NYLL, a plaintiff must plead: "(1) participation in protected activity known to the defendant . . . ; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action." *Mullins v. City of New York*, 626 F.3d 47, 53 (2d Cir. 2010); *see also Kassman v. KPMG LLP*, 925 F. Supp. 2d 453, 472 (S.D.N.Y. 2013).

"[A] causal connection between an adverse action and a plaintiff's protected activity may be established" in either of two ways: "'by showing that the protected activity was closely followed in time by the adverse action,'" *Mullins*, 626 F.3d at 53 (quoting *Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons*, 842 F.2d 590, 593 (2d Cir. 1988)), or "'through evidence of retaliatory animus directed against a plaintiff by the defendant.'" *Id*. (quoting *Johnson v. Palma*, 931 F.2d 203, 207 (2d Cir. 1991)). "When a plaintiff is relying solely on temporal proximity, the protected activity and an adverse employment action must occur 'very close' to each other." *Beachum v. AWISCO N.Y.*, 785 F. Supp. 2d 84, 98 (S.D.N.Y. 2011) (quoting *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)). "[C]ourts in this Circuit have consistently held that the passage of two to three months between the protected activity and the adverse employment action does not allow for an inference of causation." *Id.* (internal quotations and citation omitted).

Plaintiff alleges that she complained to Rubenstein, Radwan, and other tenants of the office suite about her wage claims, including that she was not paid minimum wage or overtime. (TAC ¶ 444; *see also* TAC ¶¶ 312-14, 328, 360.) Plaintiff also alleges that she complained to Rubenstein regarding his failure to pay her wages in a timely manner and about the uncompensated work she was performing for Radwan. (TAC ¶¶ 128, 185, 382.) These internal complaints about her wage claims are sufficient to establish that Plaintiff engaged in protected activity. *See Greathouse v. JHS Sec. Inc.*, 784 F.3d 105, 115-16 (2d Cir. 2015); *Laboy v. Office Equipment & Supply Corp.*, No. 15-cv-3321 (RA) (AJP), 2016 WL 5462976, at *7 (S.D.N.Y. Sept. 29, 2016).

In support of the second element of a retaliation claim—an adverse employment action—Plaintiff alleges that Rubenstein terminated her employment as a result of her protected activity, improperly withheld her pay at various points during her employment, and failed to reimburse her for office expenses she incurred on her last day of employment. (TAC ¶¶ 128, 185, 249, 452, 444.) Termination and the withholding of wages are adverse acts for purposes of stating a retaliation claim against Rubenstein. *See Galabya v. N.Y.C. Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000) (defining adverse employment action to include "termination of employment"); *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 223-24 (2d Cir. 2001) (holding that the loss of use of wages for a period of time is an adverse action). However, Plaintiff's retaliation claim against Radwan fails because the TAC does not allege that Radwan played any role in either alleged adverse employment action or that Radwan took any other

cognizable adverse action against her.[4] *See Schear v. Food Scope Am., Inc.*, 297 F.R.D. 114, 134

(S.D.N.Y. 2014) ("individual liability under the FLSA is premised upon personal responsibility for

making decisions about the conduct of the business that contributed to the violations of the

Act") (internal quotations omitted).

Plaintiff's claim also falters as to the third element of her retaliation claim because

Plaintiff has failed to plead any facts plausibly supporting a causal nexus between her

complaints about pay and the adverse employment actions she identifies. First, Plaintiff does

not identify any direct evidence of a retaliatory motive on the part of Radwan or Rubenstein.

While the TAC summarily asserts that Plaintiff believes she was terminated because she

objected to Defendants' pay practices, it is silent as to any factual underpinnings which would

substantiate this belief. On the contrary, the TAC states that Rubenstein terminated her

employment after she and Rubenstein had an argument about damage done to Plaintiff's

laptop. (TAC ¶¶ 214-23.) According to Plaintiff, during this dispute, Rubenstein told her that he

did not want her to continue working for him because he "no longer trusted Plaintiff" and he

blamed her for causing him to become a third-party defendant in a legal malpractice action.

(TAC ¶¶ 219, 447.) These stated reasons for firing Plaintiff have nothing to do with Plaintiff's

wage complaints.

Plaintiff also cannot demonstrate an inference of retaliation by relying on the temporal

---

[4] Plaintiff also suggests that Radwan's filings in this case were retaliatory and that Rubenstein likewise filed a motion to strike in another litigation in which Plaintiff and Rubenstein are parties. (*See* TAC ¶¶ 462, 495.) Defendants' motions, which were filed as part of their defenses in litigations commenced by Plaintiff, do not constitute an adverse action for purposes of stating a retaliation or discrimination claim. *See generally U.S. v. N.Y.C. Trans. Auth.*, 97 F.3d 672, 677 (2d Cir. 1996) (holding that "reasonable defensive measures" do not constitute an adverse action because "[a]t some level of generality, any action taken by an employer for the purpose of defending against the employee's charge can be characterized as adverse to the employee."); *Steffes v.*

proximity between her protected activity and the alleged adverse employment actions because the TAC does not specify when Plaintiff engaged in the alleged protected activity. Based on Plaintiff's vague allegations that she complained about alleged wage violations at some unspecified time during her two-year employment, this Court cannot plausibly conclude that the protected activity was followed closely in time by an adverse act. *See Wang v. Palmisano*, 51 F. Supp. 3d 521, 540-41 (S.D.N.Y. 2014) (collecting cases); *see also Henry v. N.Y.C. Health & Hosp. Corp.,* 18 F. Supp. 3d 396, 412 (S.D.N.Y. 2014) (granting a motion to dismiss where the complaint alleged that the defendants retaliated against the plaintiff "when she complained" and "after she complained," but where it "fail[ed] to state with even a modicum of specificity when the relevant events occurred[,]" rendering the complaint's "conclusory allegations . . . simply too vague in nature and non-specific as to time to serve as a basis for [the plaintiff's] retaliation claims") (alterations and internal quotation marks omitted); *Ward v. Shaddock*, No. 14-cv-7660 (KMK), 2016 WL 4371752, at *13 (S.D.N.Y. Aug. 11, 2016).

For these reasons, the Court recommends that Plaintiff's motion to amend be denied insofar as it seeks to add a retaliation claim under the FLSA and NYLL against Defendants.

### F. Wage Claims Under FLSA And NYLL Against Radwan

The TAC appears to seek recovery against Radwan for seven wage-and-hour claims: unpaid minimum wage; unpaid overtime; unpaid spread-of-hours compensation; recordkeeping violations; failure to provide wage notices; untimely payment of wages; and unpaid vacation, sick, and holiday pay. All of these claims were asserted against Rubenstein in the initial Complaint, but Plaintiff now alleges that Radwan and Rubenstein are both liable for her wage

---

*Stepan Co.*, 144 F.3d 1070, 1075 (7th Cir. 1998) (noting that "it will be the rare case in which conduct occurring

claims because Radwan and Rubenstein jointly employed her. For example, the TAC specifically asserts that Radwan directed Plaintiff to carry out work on behalf of her private practice, such as witnessing wills, delivering documents and performing other tasks, but Radwan did not compensate her for such work. (*See e.g.,* TAC ¶¶ 310-12, 316, 415.)

### 1.   FLSA Enterprise Coverage

In opposition to Plaintiff's motion to amend, Radwan argues that Plaintiff's proposed FLSA claims against her are futile because Radwan's law practice does not generate enough income to qualify as an "enterprise engaged in commerce" for purposes of triggering coverage under the FLSA. (Doc. No. 27, ¶ 7.) Contrary to Radwan's characterization of the FLSA revenue requirement as "jurisdictional" (Doc. No. 27, ¶ 7), the prevailing view in this Circuit is that the question of whether enterprise coverage applies goes to the merits of an FLSA cause of action and is not jurisdictional. *See, e.g., Li v. Ichiro Sushi, Inc.*, No. 14-cv-10242 (AJN), 2016 WL 1271068, at *6, n.6 (S.D.N.Y. Mar. 29, 2016); *Torralba v. Little India Stores*, No. 14-cv-595 (GWG), 2016 WL 771192, at *3 (S.D.N.Y. Feb. 29, 2016). Accordingly, this Court declines to consider Radwan's representations about the amount of revenue generated by her practice in assessing whether Plaintiff's FLSA claims against Radwan are viable.[5]

### 2.   Minimum Wage Claims Under The FLSA And NYLL

In the TAC, Plaintiff asserts that she was consistently paid below the federal and state minimum wages. The FLSA requires covered employers to pay employees a minimum wage of

---

within the scope of litigation constitutes retaliation.").

[5] Under the FLSA and NYLL, the test for determining whether an employee-employer relationship exists—or whether an individual was jointly employed by more than one entity or individual—is a fact-sensitive analysis that considers the totality of the circumstances. *See, e.g., Olvera v. Bareburger Grp. LLC*, 73 F. Supp. 3d 201, 204-08 (S.D.N.Y. 2014). Here, Plaintiff had plead sufficient facts to support an inference of joint employment.

$7.25 per hour during the relevant time period. 29 U.S.C. § 206(a)(1). The New York State minimum wage ranged from $7.15 to $8.75 per hour during Plaintiff's employment. *See* N.Y. LAB. L. § 652 (1). Plaintiff alleges that she was paid approximately $3.57 per hour in 2013, $4.16 per hour in 2014, and $6.25 per hour in 2015. (TAC ¶¶ 37, 42, 44.) Plaintiff further claims that she did not receive any compensation for the work she performed for Radwan. At the pleading stage, these allegations must be accepted as true and, thus, this Court finds that Plaintiff has stated a claim for unpaid minimum wage against Radwan.

### 3. Overtime Claims Under The FLSA And NYLL

Under both the NYLL and FLSA, employers are required to compensate employees for overtime work—that is, work in excess of 40 hours per week—"at a rate not less than one and one-half times the regular rate at which [s]he is employed." 29 U.S.C. § 207; *see also* NYCRR § 142-2.2; *Dejesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 89, n.5 (2d Cir. 2013) ("In light of the fact that the relevant portions of New York Labor Law do not diverge from the requirements of the FLSA, our conclusions below about the FLSA allegations apply equally to the NYLL state law claims.").

"[I]n order to state a plausible overtime claim, a plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours," which would then entitle the employee to time-and-a-half for excess hours over forty in a particular week. *See Lundy v. Catholic Health Sys. of Long Island Inc*., 711 F.3d 106, 114 (2d Cir. 2013) (citing 29 U.S.C. § 207(a)(1).) "Plaintiffs must provide sufficient detail about the length and frequency of their unpaid work to support a reasonable inference that they worked more than forty hours in a given week." *Nakahata v. N.Y. Presbyterian Healthcare Sys., Inc.,* 723

F.3d 192, 201 (2d Cir. 2013). The Second Circuit has addressed the degree of specificity needed to state an overtime claim under the FLSA and NYLL in three recent opinions.

In *Lundy v. Catholic Health Systems of Long Island Inc.*, the Second Circuit held that a plaintiff must do more than merely plead that she worked "occasional" overtime to state a claim. 711 F.3d at 114-15. Because the plaintiffs had "not alleged a single workweek in which they worked at least 40 hours and also worked uncompensated time in excess of 40 hours," they failed to state a claim. *Id.* at 114.

Next, in *Nakahata v. N.Y. Presbyterian Healthcare Systems, Inc.*, the Second Circuit similarly affirmed a dismissal of FLSA and NYLL overtime claims where plaintiffs had pled that they "regularly worked hours both under and in excess of forty per week and were not paid for all of those hours." 723 F.3d at 199, 201. Applying *Lundy*, the Court held that "plaintiffs must provide sufficient detail about the length and frequency of their unpaid work to support a reasonable inference that they worked more than forty hours in a given week." *Id.* at 201.

Finally, in *Dejesus v. HF Management Services, LLC*, the Second Circuit affirmed the dismissal of plaintiff's overtime claims, finding that complaint was "devoid of any numbers to consider beyond those plucked from the statute." 726 F.3d at 89. In that case, the plaintiff alleged that she worked "more than forty hours per week during 'some or all weeks' of her employment." *Id.* at 87. As the district court noted in its decision, because plaintiff failed "to set forth the precise position she held, any approximation of the number of unpaid overtime hours worked, her rate of pay, or any approximation of the amount of wages due," she failed to state a cognizable claim for overtime. *Id.* at 87 (citations omitted). In its affirmance, the Second Circuit articulated that plaintiffs need not "keep careful records and plead their hours with

mathematical precision," but held that they nevertheless must use their "memory and experience" to provide the court with "sufficiently developed factual allegations." *Id.* at 90.

Whether Plaintiff states a plausible overtime claim under the *Lundy*, *Nakahata*, and *Dejesus* trilogy is a close call, but this Court ultimately finds that Plaintiff has presented sufficient facts to support her claims. The TAC sets forth details about Plaintiff's position and her hourly rates of pay. It also provides facts regarding Plaintiff's work responsibilities for both Defendants, including allegations about instances when Plaintiff was required to work late in the evening (TAC ¶ 191, 405, 421) and on weekends (TAC ¶¶ 102, 104, 122, 169, 174-75). Plaintiff also asserts that she was denied overtime compensation even though, at various points in her employment, she worked between 6 and 7 days per week, 10- to 14-hour days, and/or 60 hours per week. (*See, e.g.,* TAC ¶¶ 42, 96, 132.) Although Plaintiff fails to identify any single specific week in which she worked more than 40 hours and was denied overtime compensation, the TAC recites a rough estimate of the wages Plaintiff claims to have earned during her employment with Defendants. Specifically, Plaintiff alleges that she was told she would be paid $17.50 per hour (TAC ¶ 37), meaning that her overtime rate for hours worked in excess of 40 in a week would be $26.25. The TAC further alleges that, based on the number of hours Plaintiff worked, she earned $78,890, but was only paid $20,600. (TAC ¶¶ 71, 73.) Based on Plaintiff's estimate of her earnings, her hourly rates, her dates of employment, and her allegation that she only took one week off during the course of her employment, this Court is able to calculate that Plaintiff claims to have worked an average of approximately 42.5 hours per week. Thus, accepting Plaintiff's allegations as true, the facts alleged in the TAC are sufficient to "support a reasonable inference that [Plaintiff] worked more than forty hours in a

given week." *Nakahata*, 723 F.3d at 201; *see also Lundy*, 711 F.3d at 114, n.7 (an approximation of overtime hours "may help draw a plaintiff's claim closer to plausibility."). Accordingly, this Court grants Plaintiff's motion to amend insofar as it adds a claim for unpaid overtime compensation against Radwan.

### 4.  *Spread of Hours Claim Under The NYLL*

Under the NYLL, eligible employees are entitled to spread-of-hours compensation, meaning "one hour's pay at the basic minimum hourly wage rate, in addition to the minimum wage required" for any shift "in which the spread of hours exceeds 10 hours." NYCRR § 142-2.4. The "spread of hours" refers to "the interval between the beginning and end of an employee's workday." NYCRR § 142-2.18. In other words, employers must pay employees for an extra hour of pay at the regular minimum wage for each day that employees work more than ten hours. *Azeez v. Ramaiah*, No. 14-cv-5623 (PAE), 2015 WL 1637871, at *4 (S.D.N.Y. Apr. 9, 2015).

Here, Plaintiff alleges that she: (i) earned less than the statutory minimum wage (TAC ¶¶ 37, 42, 44); (ii) worked more than 10 hours per day at various times during her employment (TAC ¶¶ 83, 96, 132); and (iii) she did not receive spread-of-hours pay. (TAC ¶¶ 38, 236.) While these factual assertions are sparse, this Court cannot say that Plaintiff has failed to state a claim for unpaid spread-of-hours compensation as a matter of law and, thus, this Court will allow Plaintiff to advance a claim for unpaid spread-of-hours-compensation against Radwan. *See Humphrey v. Rav Investigative & Sec. Servs. Ltd.*, 169 F. Supp. 3d 489, 498-500 (S.D.N.Y. 2016).

### 5.  *Recordkeeping Violations Under the FLSA*

The TAC also alleges that Defendants violated the FLSA by failing to maintain records regarding her employment. (TAC ¶ 47.) The FLSA requires employers to "make, keep, and

preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him." 29 U.S.C. § 211(c). 29 U.S.C. § 215 makes it "unlawful" to violate this recordkeeping provision of the FLSA. 29 U.S.C. § 215(a)(5). Nevertheless, courts "have repeatedly found that the FLSA does not authorize employees to bring a private action against an employer for failure to abide by the record-keeping requirements of Section 211(c)." *Ayala v. Looks Great Servs., Inc.*, No. 14-cv-6035 (ADS) (SIL), 2015 WL 4509133, at *6 (E.D.N.Y. July 23, 2015) (collecting cases); *Klein v. City of New York*, No. 10-cv-9568 (PAE) (JLC), 2011 WL 5248169, at *2, n.1 (S.D.N.Y. Oct. 28, 2011). This Court accordingly recommends that Plaintiff's motion to amend to add a claim against Radwan for FLSA recordkeeping violations be denied with prejudice.

### 6. Wage Notice Claims Under The NYLL

Under the NYLL, "[e]very employer" is required to provide each employee "at the time of hire" with written notice that includes her rate of pay, the basis for that pay rate, the regular pay day designated by the employer, and other related information. N.Y. Lab. L. § 195(1)(a). Employers also are required to provide notice "with every payment of wages" that includes the dates of work covered by that payment, rates of pay, and deductions, among other information. N.Y. Lab. L. § 195(3). Additionally, employers must provide written notice to any terminated employee of her exact date of termination within five days of such termination. N.Y. Lab. L. § 195(6).

The TAC alleges that Plaintiff was not given written wage notices upon hire or at any other time during her employment. (TAC ¶¶ 58-61, 64, 271.) Plaintiff also alleges that she was not given notice of her date of termination. (TAC ¶ 247.) While Plaintiff's allegations suggest

that she believed Rubenstein was responsible for disseminating the notice, not Radwan, Plaintiff's allegations that Radwan and Rubenstein operated as her joint employers are sufficient to state a claim for notice violations against Radwan at the pleading stage. *See Mendez v. U.S. Nonwovens Corp.*, 2 F. Supp. 3d 442, 457-58 (E.D.N.Y. 2014). Accordingly, this Court grants Plaintiff's request to add a claim against Radwan for NYLL wage notice violations.

### 7.   *Untimely Payment Of Wages Under The FLSA And NYLL*

The TAC also alleges that Defendants failed to pay Plaintiff her wages in a timely fashion. Under the NYLL, employers must pay the wages for clerical and other workers "in accordance with the agreed terms of employment, but not less frequently than semi-monthly, on regular pay days designated in advance by the employer." N.Y. LAB. L. § 191(1)(d). Following an employee's termination, the employer must pay the employee's owed wages "not later than the regular pay day for the pay period during which the termination occurred." N.Y. LAB. L. § 191(3). While the FLSA does not statutorily prescribe a particular payment schedule, courts have consistently interpreted Section 206(a) of the FLSA to require the prompt payment of wages. *See*, *e.g., Belizaire v. RAV Investigative & Sec. Servs. Ltd.,* 61 F. Supp. 3d 336, 353 (S.D.N.Y. 2014); *Rogers v. City of Troy, N.Y.,* 148 F.3d 52, 57 (2d Cir. 1998) ("it is clear that the FLSA requires wages to be paid in a timely fashion").

Here, Plaintiff alleges that she was not paid in a timely manner and that Rubenstein withheld her paychecks on various occasions. (TAC ¶¶ 45, 105, 128, 185-88, 191, 243-44, 408.) She also alleges that, upon her termination on July 31, 2015, Rubenstein dated her paycheck for five days into the future, which precluded her from being able to immediately access her wages. (TAC ¶¶ 105, 243-44.) Accepting Plaintiff's allegations as true, including that Rubenstein

and Radwan jointly employed Plaintiff, Defendants' delay in paying Plaintiff her wages, either by failing to issue paychecks or by forward-dating her paychecks, violates the prompt payment requirements of the FLSA and NYLL. *See Belizaire*, 61 F. Supp. 3d at 353-54; *Testa v. Carefusion*, No. 14-cv-5202 (JFB) (AKT), 2016 WL 4099113, at *6 (E.D.N.Y. Aug. 2, 2016) (allegations that Plaintiff was owed commissions that were not paid upon his termination was sufficient to state a claim under NYLL § 191(3)).[6] Therefore, this Court grants Plaintiff's motion to amend the Complaint to add a claim for untimely wage payments against Radwan.

### 8. *Unpaid Vacation Time, Sick Time, And Holiday Pay*

Plaintiff also appears to seek recovery for unpaid vacation time, sick time, and federal holiday pay against Radwan. Neither the FLSA nor the NYLL require an employer to provide paid vacation, sick leave or holiday pay. *See Sosnowy v. A. Perri Farms, Inc.*, 764 F. Supp. 2d 457, 475-76 (E.D.N.Y. 2011) ("It is axiomatic that an employee has no inherent right to paid vacation and sick days, or payment for unused vacation and sick days, in the absence of an agreement, either express or implied."); *see also* N.Y. DEP'T OF LAB., *Wage and Hours: Frequently Asked Questions*, available at: https://labor.ny.gov/workerprotection/laborstandards/faq.shtm#9; U.S. DEP'T OF LAB., *Holiday Pay*, available at: https://www.dol.gov/general/topic/wages/holiday. Further, Plaintiff has not alleged any facts to suggest that she is otherwise entitled to such compensation. *See Crawford v. Coram Fire Dist.*, No. 12-cv-3850, 2015 WL 10044273, at *5-6 (E.D.N.Y. May 4, 2015). Accordingly, insofar as the TAC seeks to add a cause of action for unpaid

---

[6] To the extent that Plaintiff's claim for untimely payment of wages is premised upon her allegation that she was not compensated for the work she performed for Radwan, such a claim is only actionable as a claim for unpaid minimum wage and overtime compensation, and cannot be recast as a duplicative claim for untimely payment of wages. *See, e.g., Kone v. Joy Construction Corp.*, No. 15-cv-1328 (LTS), 2016 WL 866349, at *4 (S.D.N.Y. Mar. 3, 2016) (holding that NYLL § 191 is an "an inappropriate vehicle for . . . recovery where the gravamen of plaintiffs'

vacation time, sick days or holidays, this Court recommends that amendment be denied as futile.

**G.   Intentional Infliction Of Emotional Distress Against Both Defendants**

The TAC also purports to assert a claim for intentional infliction of emotional distress, which is premised upon allegations that Defendants mistreated Plaintiff in various ways during the course of her employment.

In New York, claims for intentional infliction of emotional distress are subject to a one-year statute of limitations. *See, e.g., Rentas v. Ruffin*, 816 F.3d 214, 226 (2d Cir. 2016) ("In New York, an IIED claim must be brought within one year of the injury."). Plaintiff's employment with Defendants ceased on July 31, 2015. (TAC ¶ 243.) However, Plaintiff did not commence this action until October 13, 2016, which is more than a year after her employment-related emotional distress claims could have arisen. Thus, Plaintiff's claims for intentional infliction of emotional distress are barred by the statute of limitations. This Court accordingly recommends that Plaintiff's motion to amend be denied insofar as Plaintiff seeks to add claims for intentional infliction of emotional distress against Defendants.

**H.   Fraud Against Radwan**

The TAC also appears to advance a state law fraud claim against Radwan. To state a claim for fraud, a plaintiff must plead facts showing that: "(1) the defendant made a material false statement or omission; (2) the defendant intended to defraud the plaintiff; (3) the plaintiff reasonably relied on the representation or omission; and (4) the plaintiff suffered damage as a result of such reliance." *Mumin v. Uber Techs., Inc.*, No. 15-cv-6143 (NGG) (JO), 2017 WL

---

complaint is that the sums paid were not equal to what plaintiffs claim they were entitled to receive") (internal

934703, at *23 (E.D.N.Y. Mar. 8, 2017) (internal citations omitted).

Here, Plaintiff does not allege that Radwan made any false statements to Plaintiff directly. Instead, Plaintiff alleges that Defendants committed fraud on the government when they failed to properly classify Plaintiff as an employee, which further resulted in Plaintiff being deprived of workers' compensation, disability and unemployment benefits that she otherwise would have been entitled to receive. (TAC ¶¶ 484-85.) The fraud claim fails as a matter of law because a plaintiff cannot "establish the reliance element of a fraud claim under New York law by showing that a third party relied on the defendant's false statements." *Pasternack v. Lab. Corp. of Am. Holdings*, 839 F.3d 151, 152 (2d Cir. 2016) (citing *Pasternack v. Lab. Corp. of Am. Holdings*, 27 N.Y.3d 817, 828-29 (2016)).

Even if Plaintiff were able to proceed based on third-party reliance, Plaintiff still must satisfy the heightened pleading standard for fraud claims pursuant to Rule 9(b) of the Federal Rules of Civil Procedure. Rule 9(b) requires a plaintiff to "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Kottler v. Deutsche Bank AG*, 607 F. Supp. 2d 447, 462 (S.D.N.Y. 2009) (quoting *Stevelman v. Alias Research, Inc.*, 174 F.3d 79, 84 (2d Cir. 1999)) (internal quotation marks and citation omitted). Plaintiff's conclusory allegations that Radwan failed to correctly report Plaintiff's employment status to various government agencies falls significantly short of meeting the standard for pleading a cognizable fraud claim. Accordingly, this Court recommends that Plaintiff's request to add a claim for fraud against Radwan be denied.

---

citations omitted); *Myers v. Hertz Corp.*, 624 F.3d 537, 545-46 (2d Cir. 2010).

I.   **Tortious Inference Against Rubenstein**

The TAC also seeks to add a new claim of tortious interference with contract against Rubenstein. "The elements of a claim for tortious interference with a contract under New York law are the existence of a valid contract between the plaintiff and a third party, defendant's knowledge of that contract, defendant's intentional procurement of the third-party's breach of the contract without justification, actual breach of the contract, and damages resulting therefrom." *Makhoul v. Watt, Tieder, Hoffar & Fitzgerald, L.L.P.*, 662 F. App'x 33, 36 (2d Cir. 2016) (quoting *Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413 (1996)) (internal quotations omitted).

Plaintiff accuses Rubenstein of interfering with her relationships with two attorneys who were representing her in different matters. She first claims that Rubenstein approached Hoffman, who worked in Rubenstein's office suite and who also was representing Plaintiff in a malpractice action, for advice about defending against Plaintiff's threatened wage claims. (TAC ¶ 453.) According to Plaintiff, Hoffman subsequently told Plaintiff that he could not vigorously represent her because of the tension created by Rubenstein approaching him in the office. (TAC ¶ 454.) Plaintiff further alleges another unspecified attorney filed a motion to withdraw as Plaintiff's counsel in a legal malpractice action after Rubenstein's counsel told Plaintiff's counsel that Plaintiff was untrustworthy and might bring a malpractice claim against him. (TAC ¶ 460.)

These vague allegations appear to be little more than mere suspicions that are inadequate to support a claim for tortious interference. *See Nadel v. Play–by–Play Toys & Novelties, Inc.,* 208 F.3d 368, 382 (2d Cir. 2000). Plaintiff does not specifically allege a contract between her and either attorney, nor does she allege that the attorneys' withdrawals

amounted to an unjustifiable breach of said contacts. *See Kirch v. Liberty Media Corp.*, 449 F.3d 388, 402 (2d Cir. 2006) (claim for tortious interference requires that plaintiff an actual breach of the contract). Moreover, Plaintiff has failed to state a claim for tortious interference because she does not allege that she suffered damages as a result of either severed attorney-client relationship. The Court accordingly recommends that Plaintiff's request to add a cause of action for tortious interference against Rubenstein be denied.

## III.    REQUESTS TO STRIKE

There are also two requests to strike portions of the record pending before this Court— (1) Plaintiff's motion to strike all of Radwan's filings, and (2) Radwan's request to strike certain embarrassing and harassing portions of Plaintiff's proposed amended pleadings.

Beginning first with Plaintiff's request, Plaintiff summarily asserts that Radwan's affirmation in opposition to Plaintiff's motion to amend and other filings are improper and unauthorized and, as such, should be stricken from the record. As a threshold matter, Rule 12(f) only pertains to the striking of pleadings, not to motion papers or other submissions. *See Katz v. Mogus*, No. 07-cv-8314 (PKC) (KNF), 2009 WL 5173789, at *2 (S.D.N.Y. Dec. 30, 2009). Plaintiff's motion to strike must be denied for this reason. Additionally, Plaintiff's argument that Radwan should not be permitted to file documents through the Pro Se Intake Unit is also misguided. Any party who is appearing without counsel in an action is permitted to file papers with the Pro Se Intake Unit. Accordingly, Plaintiff's motion to strike is denied.

Radwan asks the Court to strike certain allegations that are personal, embarrassing, inflammatory and irrelevant from any amended pleading. Radwan provided the Court with a redacted version of the Proposed Amended Complaint, which conceals the allegations that she

deemed to be improper. The Court declines to adopt Radwan's proposed redactions as a whole, however, because some of the requested redactions encompass allegations that are at least tangentially related to Plaintiff's claims in this litigation. *See Schoolcraft*, 299 F.R.D. at 67 (it is "not enough that the matter offends the sensibilities of the objecting party if the challenged allegations describe acts or events that are relevant to the action").

Nevertheless, this Court agrees that some of the allegations in the TAC are plainly irrelevant and serve no purpose other than to reveal embarrassing and personal information about Defendants and non-parties. Additionally, some allegations in the TAC concern Defendants' clients and could possibly be construed as revealing personal and/or privileged information about such client relationships. For these reasons, this Court strikes certain irrelevant allegations from the TAC, as reflected in the redacted version of the TAC annexed to this decision. The Clerk of Court is hereby directed to file the annexed redacted TAC as the amended pleading in this matter.

## IV.    LEAVE TO AMEND

In accordance with the special solicitude afforded to pro se litigants, this Court recommends that Plaintiff be given the opportunity to further amend the TAC to correct the pleading deficiencies in the claims that this Court has recommended be dismissed. *See Tracy*, 623 F.3d at 101 ("A pro se plaintiff should be afforded an opportunity fairly freely to amend his complaint") (alteration and internal quotation marks omitted)); *Frasier v. Gen. Elec. Co.*, 930 F.2d 1004, 1007 (2d Cir. 1991) (noting that a district court should not dismiss an action without granting leave to amend at least once when the complaint gives "any indication that a valid claim" may be stated) (internal quotation marks omitted). However, to the extent that this

Court has recommended that a particular claim be dismissed with prejudice, Plaintiff should not be permitted to seek further amendment as to that claim. *See e.g., MacKinnon v. City of New York/Human Res. Admin.*, 580 F. App'x 44, 45-46 (2d Cir. 2014) (leave to amend need not be granted to pro se when "the problem with his complaint is substantive [and] better pleading will not cure it") (internal quotation omitted); *Campbell v. Rosenblatt*, No. 15-cv-5169 (JG), 2015 WL 6965186, at *2 (E.D.N.Y. Nov. 10, 2015) ("[The court] need not afford [opportunity to amend] here where it is clear from plaintiff's submission that she cannot establish a basis for this Court's subject matter jurisdiction and thus any attempt to amend the complaint would be futile.").

In deciding whether to seek leave to file a Fourth Amended Complaint, Plaintiff should be mindful of the deficiencies in her claims, as identified above. To the extent that Plaintiff opts to file an amended pleading, she must ensure that the allegations stricken by the Court in the TAC do not appear in the Fourth Amended Complaint. This Court recommends that Plaintiff be required to seek leave to file a Fourth Amended Complaint, if any, within 30 days and that her failure to do so will preclude her from seeking leave to replead the claims found to be futile by this Court at a later time.

Further, before seeking leave to file a Fourth Amended Complaint, Plaintiff is strongly encouraged to consult a new legal clinic opened in this District to assist people who are parties in civil cases and do not have lawyers. The Clinic is run by a private organization called the New York Legal Assistance Group; it is not part of, or run by, the Court. The Clinic is located in the Thurgood Marshall United States Courthouse, 40 Centre Street, New York, New York, in Room LL-22, which is just inside the Pearl Street entrance to that Courthouse. The Clinic is open on

weekdays from 10 a.m. to 4 p.m., except on days when the Court is closed. A party without legal representation can make an appointment in person or by calling 212-659-6190.

## CONCLUSION

For the foregoing reasons, this Court respectfully recommends that Plaintiff's motion for leave to amend (Doc. No. 33) be denied in part as to the following causes of action: (i) discrimination in violation of Title VII against Defendants; (ii) discrimination in violation of the ADA against Radwan; (iii) hostile work environment in violation of the NYSHRL against Rubenstein; (iv) hostile work environment in violation of the NYSHRL and NYCHRL against Radwan; (v) retaliation in violation of the NYSHRL and NYCHRL against Defendants; (vi) disability discrimination in violation of the NYSHRL and NYCHRL against Radwan; (vii) retaliation in violation of the FLSA and NYLL against Defendants; (viii) FLSA recordkeeping violations against Radwan; (ix) unpaid vacation, sick, or holiday pay against Radwan; (x) intentional infliction of emotional distress against Defendants; (xi) fraud against Radwan; and (xii) tortious interference against Rubenstein.

This Court grants Plaintiff's motion for leave to amend (Doc. No. 33) with respect to the following claims: (i) hostile work environment in violation of the NYCHRL against Rubenstein; (ii) unpaid minimum wage against Radwan; (iii) unpaid overtime against Radwan; (iv) unpaid spread-of-hours compensation against Radwan; (v) failure to provide wage notices against Radwan; and (vi) untimely payment of wages against Radwan. The Court further denies Plaintiff's motion to strike (Doc. No. 33), and grants Radwan's request to strike in part, as set forth above.

The Clerk of Court is also directed to terminate Plaintiff's motion for leave to amend

pending as Doc. No. 20 as moot.

SO ORDERED.

Date:   May 23, 2017
        New York, New York

_Katharine H. Parker_

KATHARINE H. PARKER
United States Magistrate Judge

<u>NOTICE</u>

**The parties shall have fourteen days from the service of this Report and Recommendation to file written objections to the portions of this Opinion, Report & Recommendation that recommend denying Plaintiff's request to amend as to certain specific claims, pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure (_i.e.,_ until June 6, 2017). _See also_ Fed. R. Civ. P. 6(a), (d) (adding three additional days only when service is made under Fed. R. Civ. P. 5(b)(2)(C) (mail), (D) (leaving with the clerk), or (F) (other means consented to by the parties)).**

**If any party files written objections to this Report and Recommendation, the opposing party may respond to the objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Paul A. Engelmayer at the United States Courthouse, 40 Foley Square, New York, New York 10007, and to any opposing parties. _See_ 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Engelmayer. The failure to file these timely objections will result in a waiver of those objections for purposes of appeal. _See_ 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); _Thomas v. Arn_, 474 U.S. 140 (1985).**