UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                       :

AYLIN GAUGHAN,                      :

                               :           16 Civ. 8062 (PAE)(KHP)
                   Plaintiff,     :

                               :           <u>OPINION & ORDER</u>

          -v-                   :

                               :

LEE A. RUBENSTEIN,             :

                               :

                   Defendant.   :

------------------------------------------------------------------------X

PAUL A. ENGELMAYER, District Judge:

     Plaintiff Aylin Gaughan, proceeding *pro se,* brings this action against her former

employer, defendant Lee A. Rubenstein, alleging violations of the Fair Labor Standards Act

("FLSA"), 29 U.S.C. §§ 201 *et seq.*, and New York Labor Law ("NYLL").  Gaughan seeks, *inter*

*alia,* unpaid wages and liquidated damages.  Gaughan brings this action despite having settled

these same claims with Rubenstein on January 25, 2016.  She argues that the Settlement

Agreement (the "Agreement") executed between her and Rubinstein is not binding under *Cheeks*

*v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), insofar as the Agreement

purported to resolve Gaughan's FLSA claims.

     Two motions are pending.  First, Gaughan seeks to amend her complaint, Dkt. 2

("Complaint"), to add claims against Rubenstein and a new defendant, Jennifer Radwan, whom

Gaughan claims jointly employed her with Rubenstein.  Magistrate Judge Katharine Parker, in a

Report & Recommendation to the Court, Dkt. 38 ("Report"), recommends that Gaughan's

motion be granted in part and denied in part.  Gaughan objects to aspects of the Report, all

involving its recommendation that Gaughan not be permitted to bring certain claims against

Radwan.  Second, Rubenstein moves to dismiss the Complaint against him, or, alternatively, for summary judgment, on the grounds that her claims against him were resolved and now are now barred by the Agreement.

For the reasons that follow, Rubenstein's motion to dismiss is granted.  And, to the extent that it is not rendered moot by that dismissal, the Court, after a *de novo* review of the objected-to aspects of the Report, adopts the Report in its entirety, and therefore grants in part, and denies in part, Gaughan's motion to amend.

## I.      Background[1]

### A.      Factual Background

Before the parties formed the employer-employee relationship at issue, Gaughan retained Rubenstein, an attorney, to represent her, post-judgment, in a divorce action.  Complaint ¶ 22. Later, in 2013, Rubenstein hired Gaughan as a paralegal, to be paid at the agreed rate of $17.50 per hour, and the agreed overtime rate of $26.75 per hour.  *Id.* ¶¶ 32, 37, 71.  Gaughan claims, however, that contrary to their agreement, Rubenstein initially paid Gaughan at the rate of $3.57 per hour.  *Id.* ¶ 37.  In 2014, Gaughan alleges that Rubenstein increased her pay to $4.16 per hour, still well below the minimum wage.  *Id.* ¶ 42.  Gaughan also claims that she worked on federal holidays without compensation, *id.* ¶ 39, and that Rubenstein denied her requests for sick time and time off during certain holidays, *id.* ¶¶ 40–41.

---

[1]The facts related herein are drawn primarily from Gaughan's Complaint, Dkt. 2.  *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010) ("In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint.").  The Court accepts all factual allegations in the Complaint as true, drawing all reasonable inferences in Gaughan's favor. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

In 2015, Rubenstein allegedly paid Gaughan at an hourly rate of $6.25, again below the minimum wage. *Id.* ¶ 44. In neither 2014 nor 2015 did Gaughan receive overtime pay. *Id.* ¶ 42, 44. Gaughan claims that, based on the rates to which the parties agree, she should have been paid a total of $78,890, *id.* ¶ 71, but that she was instead paid a total of $20,600, *id.* ¶ 73. Gaughan also alleges that, during 2014 and 2015, Rubenstein's payments to her (reflecting both wage and reimbursement of business expenses) were often untimely. *Id.* ¶¶ 45, 129, 167, 187.

Gaughan alleges that at no point during her employment did Rubenstein give her a contract that outlined the terms of her employment. *Id.* ¶ 54. Nor did Rubenstein give her an itemized statement detailing the portions of her paycheck withheld for taxes. *Id.* Instead, she alleges, Rubenstein "unilaterally imposed what he deemed to be the proper tax withholdings onto" Gaughan. *Id.* ¶ 65. In general during her employment, Gaughan claims, Rubenstein failed to give her any statements or records detailing, *inter alia,* the rate of her pay, allowances (such as compensation for meals or lodging), the dates of work covered by each paycheck, and overtime pay. *Id.* ¶¶ 58, 60.

Gaughan is a cancer patient who suffers from an autoimmune disease. *Id.* ¶ 93. These ailments make it difficult for Gaughan to perform strenuous tasks, especially in cold weather. *Id.* Gaughan claims that Rubenstein, on multiple occasions, nevertheless had her perform tasks for him in the midst of a snowstorm or "hurricane like" weather. *Id.* ¶ 94. Gaughan also alleges that Rubenstein is a chronic "hoarder," and his accumulation of objects spawned a putrid "dead mouse smell" within the office, which, Gaughan claims, threatened her health. *Id.* ¶¶ 140, 142.

Gaughan further alleges that Rubenstein required her, during non-working hours, to assist his adult daughter transport her luggage from Grand Central Station to Rubenstein's office. *Id.* ¶ 89. Also during her free time, Gaughan, at Rubenstein's behest, had to listen to CLE courses for

him. *Id.* ¶ 83. Rubenstein also assigned Gaughan the task of serving process papers in an improper fashion and in neighborhoods that she viewed as dangerous, such as Sunset Park, Brooklyn. *Id.* ¶ 90. Gaughan claims that she suffered from emotional distress as a result of such tasks. *Id.* ¶¶ 92, 142, 144.

Rubenstein also allegedly offered Gaughan's services to other attorneys, who sometimes tasked Gaughan with delivering documents—services for which Gaughan was not compensated. *Id.* ¶ 98. At one point, Gaughan alleges, she told Rubenstein that she would no longer work for him seven days per week, *id.* ¶ 102, yet Rubenstein called Gaughan on weekends and insisted that she come to the office immediately, *id.* Once Gaughan began to resist Rubenstein's requests that threatened her health and safety, she alleges, Rubenstein responded by either withholding her paychecks or by writing post-dated paychecks that prevented her from cashing them at the time she received them. *Id.* ¶ 105.

On June 18, 2015, Gaughan and Rubenstein engaged in an argument that concluded with Rubenstein firing her. *Id.* ¶¶ 214, 219. On June 31, 2015, Gaughan's final day of employment, Gaughan claims that Rubenstein gave her two post-dated checks, but refused to give her a third, $600, check to repay her for out-of-pocket business expenses she had paid. *Id.* ¶ 249. These travails, Gaughan claims, jeopardized her "emotional and financial well-being" and led her to fear for her safety. *Id.* ¶ 92.

On August 25, 2015, Gaughan retained the law firm of Virginia & Ambinder, LLP ("V&A") to help resolve her claims against Rubenstein. Dkt. 18 ("Gaughan Aff.") ¶ 72.[2] On

---

[2] The Complaint does not mention the Settlement Agreement, but its terms and existence are undisputed by the parties. The Court takes judicial notice of the Agreement for the purpose of resolving the pending motion to dismiss. For avoidance of doubt, had the Court held the Agreement non-cognizable on a motion to dismiss, the Court—for substantially the same reasons below—would have resolved these issues in defendant's favor by a grant of summary judgment.

September 2, 2015, Gaughan's counsel at the time, Lloyd Ambinder, sent Rubenstein a demand letter that requested $34,847.04. The amount demanded included $14,826.38 for unpaid overtime wages, $2,597.14 for unpaid minimum wages, and $17,423.52 in liquidated damages. Dkt. 14, Ex. A ("Demand Letter").

After several months of negotiation between V&A and Rubenstein, the parties agreed to settle the claims for a total of $18,000. Dkt. 14, Ex. C ("Agreement") ¶ 1.1. On January 25, 2016, Gaughan executed the Agreement. *Id.* ¶ 8.1. In pertinent part, it states:

> Both Parties and their respective representatives, employees, agents, partners, heirs, successors, subrogees and assignees, do hereby completely and irrevocably release and forever discharge the other Party and their respective representatives, employees, agents, partners, heirs, successors, subrogees, and assigns (the "Representatives") from any and all claims and rights of any nature whatsoever (including, without limitation, rights of set-off and recoupment, demands, actions, obligations, and causes of action of any and every kind, nature, and character, known and unknown) that either could have asserted in any action, the Pre-existing Action and any and all other claims and rights arising out of or relating to the subject matter of any action (including, without limitation, rights of set-off and recoupment, demands, actions, obligations, and causes of action of any and every kind, nature, and character, known and unknown) that either may have or could have filed or caused to be filed in any court of law or before any administrative agency, state or federal, or any arbitral forum existing prior to the execution of this Agreement from the beginning of the world until the date of this release. The Parties and their Representatives further agree and promise that they will neither bring any further charge, complaint, cross-complaint, action, or cause of action, against the other and its representatives based in whole or in part upon any claims, rights, demands, causes of action, or damages released pursuant to this Agreement, nor aid, abet, induce, or encourage any such claims by any person or entity.

*Id.* ¶ 3.1.

Gaughan thus agreed to release any and all claims against Rubenstein, including any claims relating to her employment.

### B.    Procedural History

On October 13, 2016, Gaughan commenced this action, *pro se*, by filing the Complaint, which brought FLSA and NYLL claims. Construing the Complaint liberally, Gaughan appears

to assert claims of unjust enrichment, negligence, breach of fiduciary duty, breach of contract, fraud, and discrimination on the basis of disability. *Id.* On January 24, 2017, Rubenstein moved for dismissal or, alternatively, for summary judgment as to all claims against him, on the grounds that all are precluded by the Agreement. Dkts. 11, 13. Rubenstein supported his motion with a memorandum of law. Dkt. 17 ("Def. Br."). On February 8, 2017, Gaughan filed a memorandum of law, Dkt. 19 ("Pl. Br."), and an affirmation, Dkt. 18 ("Gaughan Aff."), in opposition to the motions to dismiss and for summary judgment.

On February 21, 2017, Gaughan moved to amend the Complaint to add claims against Rubenstein and to add Jennifer Radwan as a defendant, Dkt. 20, and filed a memorandum of law in support, Dkt. 21 ("Pl. Amend Br."). On February 23, 2017, the Court issued an order referring the case to Judge Parker. Dkt. 24. On February 24, 2017, Rubenstein filed a reply memorandum of Law in support of his motions. Dkt. 25 ("Def. Rep. Br."). On March 10, 2017, Radwan filed an affirmation in opposition to Gaughan's motion to amend the Complaint to add Radwan, Dkt 27, and, on March 20, 2017, filed a second affirmation in opposition to the same motion. Dkt. 29. On March 21, 2017, Gaughan filed yet another motion to amend, to add claims against Radwan and Rubenstein, Dkt. 33, and a memorandum of law in support, Dkt. 34.

On May 23, 2017, Judge Parker filed the Report, recommending that the Court deny Gaughan's motion to amend as to all new claims against Rubenstein except a hostile work environment claim under the NYCHRL, and to grant Gaughan's motion to amend as to five claims against Radwan. On June 6, 2017, Gaughan filed a written objection to the Report. Dkt. 39 ("Objection").

## II.   Applicable Legal Standards

### A.   Motion to Dismiss

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In considering a motion to dismiss, a district court must "accept[] all factual claims in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor." *Lotes Co. v. Hon Hai Precision Indus. Co.*, 753 F.3d 395, 403 (2d Cir. 2014) (quoting *Famous Horse Inc. v. 5th Ave. Photo Inc.*, 624 F.3d 106, 108 (2d Cir. 2010) (internal quotation marks omitted)). However, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "[R]ather, the complaint's *[f]actual* allegations must be enough to raise a right to relief above the speculative level, *i.e.*, enough to make the claim plausible." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Twombly*, 550 U.S. at 555, 570) (internal quotation marks omitted) (emphasis in *Arista Records*). A complaint is properly dismissed where, as a matter of law, "the allegations in [the] complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558.

A court must construe a *pro se* plaintiff's pleadings liberally. *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004). "[D]ismissal of a *pro se* claim as insufficiently pleaded is appropriate only in the most unsustainable of cases." *Sealed Plaintiff v. Sealed Defendant*, 537

F.3d 185, 191 (2d Cir. 2008) (quoting *Boykin v. KeyCorp*, 521 F.3d 202, 216 (2d Cir. 2008)).

"[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than

formal pleadings drafted by lawyers." *Id.* (quoting *Erickson v. Pardus,* 551 U.S. 89, 94 (2007)

(per curiam)).

**B.      Summary Judgment**

To prevail on a motion for summary judgment, the movant must "show[] that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(a).  The movant bears the burden of demonstrating the absence of a

question of material fact.  In making this determination, the Court must view all facts "in the

light most favorable" to the non-moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106

S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *see also Holcomb v. Iona Coll*., 521 F.3d 130, 132 (2d Cir.

2008).

To survive a summary judgment motion, the opposing party must establish a genuine

issue of fact by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1);

*see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009).  "A party may not rely on mere

speculation or conjecture as to the true nature of the facts to overcome a motion for summary

judgment," because "conclusory allegations or denials cannot by themselves create a genuine

issue of material fact where none would otherwise exist." *Hicks v. Baines*, 593 F.3d 159, 166

(2d Cir. 2010) (internal citation omitted).  Only disputes over "facts that might affect the

outcome of the suit under the governing law" will preclude a grant of summary judgment.

*Anderson v. Liberty Lobby Inc*., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  In

determining whether there are genuine issues of material fact, the Court is "required to resolve

all ambiguities and draw all permissible factual inferences in favor of the party against whom

summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (citing *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)).

### C.     Motion to Amend

"A party may amend its pleading once as a matter of course within . . . 21 days after serving it, or . . . if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). A party's leave to amend should be granted "absent evidence of undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party, or futility." *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 208, 212–13 (2d Cir. 2011) (internal quotation marks and citation omitted). A motion to amend is considered futile when it fails to "state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *IBEW Local Union No. 58 Pension Trust Fund & Annuity Fund v. Royal Bank of Scotland Grp., PLC*, 783 F.3d 383, 389 (2d Cir. 2015) (quoting *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 144, 119 (2d Cir. 2012)).

## III.    Discussion

### A.     Motion to Dismiss/Motion for Summary Judgment

#### 1.     Preclusive effect of the Agreement under *Cheeks*

The viability of Gaughan's claims against Rubenstein turns on whether the Agreement between Gaughan and Rubenstein precludes these claims. Relying on the Second Circuit's decision in *Cheeks*, Gaughan contends that FLSA claims resolved by a pre-litigation, out-of-court settlement agreement cannot bind the parties involved unless either the Department of Labor ("DOL") or a court had approved the agreement's terms. Gaughan therefore argues that,

because the Agreement was never approved by the DOL or by a district court, she is not bound by its terms. Rubenstein counters that *Cheeks* does not apply to the Agreement, because it was entered into before any litigation commenced and thus fall outside of the purview of Federal Rule of Civil Procedure 41, which is the subject of the *Cheeks* decision.

For the reasons that follow, the Court agrees with Rubenstein, and holds that *Cheeks* does not apply to the Agreement. Its terms thus bind Gaughan and require dismissal of all her claims against Rubenstein.

Federal Rule of Civil Procedure 41, in relevant part, states that: "*Subject to . . . any applicable federal statute*, the plaintiff may dismiss an action without a court order by filing: . . . (ii) a stipulation of dismissal signed by all parties who have appeared." Fed. R. Civ. P. 41(a)(1)(A)(ii) (emphasis added). In *Cheeks*, the Second Circuit held that "in light of the unique policy considerations underlying the FLSA," the FLSA fits "within Rule 41's 'applicable federal statute exception.'" Thus, under Rule 41(a)(1)(A)(ii), stipulated dismissals settling FLSA claims with prejudice "require approval of the district court or the DOL to take effect." *Cheeks*, 796 F.3d at 206.

By its terms, *Cheeks* thus applies only to settlement agreements that occur within the context of Rule 41. And Rule 41, in turn, does not apply to settlement agreements entered into entirely outside the litigation context, like the Agreement at issue here. Rule 41 applies instead to dismissals, which, *a fortiori*, cannot occur unless and until an action is commenced in court. Fed. R. Civ. P. 41. Because the Agreement in this case was executed long before Gaughan brought claims in court against Rubenstein, Gaughan cannot rely on *Cheeks* as a basis to elude Rubenstein's motion to dismiss.

The Second Circuit has not considered, outside of the context of Rule 41, whether an pre-litigation agreement to settle FLSA claims—or, as here, a broader settlement agreement that waives, among others, FLSA claims—can be binding in the absence of DOL or court approval. Out-of-circuit cases reflect different outcomes.

On the one hand, the Fifth Circuit held, in *Martin v. Spring Break '83 Prods., LLC*, 688 F.3d 247 (5th Cir. 2012), that a preclusive FLSA settlement agreement executed before any court action was commenced was binding, and effectively precluded later FLSA claims. As in this case, the plaintiffs in Martin—with the guidance of their labor union representatives—settled their FLSA dispute before bringing suit. *See* 688 F.3d at 249–50. Like that here, the agreement of the parties was the product of a negotiation process undertaken between counseled plaintiffs and their employer. *See id.* at 249, 257.

On the other hand, the Eleventh Circuit held in *Lynn's Food Stores, Inc. v. United States By & Through U.S. Dep't of Labor, Employment Standards Admin., Wage & Hour Div.*, 679 F.2d 1350 (11th Cir. 1982), that a pre-litigation agreement waiving plaintiffs' rights to bring FLSA claims was invalid. *See Lynn's Food Stores,* 679 F.2d 1350. The Eleventh Circuit based that decision on its conclusion that the terms of the settlement agreement reflected an abuse of bargaining power, and that the unrepresented plaintiffs appeared to have been largely unaware at the time of the agreement that they possessed rights under the FLSA. *See id.* at 1351, 1354.

Although *Martin* and *Lynn's Food* reach different bottom-line outcomes, the two cases can be reconciled on their vastly different facts, particularly relating to whether the employees had been ably represented at the time they entered into the settlement agreement, as the Second Circuit recognized in *Cheeks. See Cheeks,* 796 F.3d at 204 (*Martin* "carved out an exception from the general rule" [established in *Lynn's Food*] and thus "cannot be read as a wholesale

11

rejection of *Lynn's Food*"). In *Martin*, the plaintiff-employees' labor union had settled the employees' claims against their employer on their behalf. *Martin*, 688 F.3d at 249. Under the collective bargaining agreement between the employees and the employer, the union was the acknowledged "exclusive representative of the employees in the bargaining unit." *Id.* When a dispute arose surrounding the employees' hours worked and hence the wages owed them, the union and the employer entered into negotiations, which resulted in the settlement agreement. *Id.* But, before the union representatives signed that agreement, the plaintiffs filed a lawsuit against their employer regarding the same wage dispute. *Id.* at 249–50.

On these facts, the Fifth Circuit upheld summary judgment for the employer, holding that the employees'

> FLSA rights were adhered to and addressed through the Settlement Agreement, not waived or bargained away. . . [The] [employees' union] did not waive FLSA claims, but instead [employees], with counsel, personally received and accepted compensation for the disputed hours. We reiterate that FLSA substantive rights may not be waived in the collective bargaining process, however, here, FLSA rights were not waived, but instead, validated through a settlement of a bona fide dispute, which [the employees] accepted and were compensated for.

*Id.* at 257. Thus, the Fifth Circuit recognized, given the fairly bargained-for resolution reached between able counsel, there was no basis to nullify the terms of the settlement agreement. The policies animating the FLSA—namely, neutralizing the employer-employee discrepancy in bargaining power and preventing the ignorant waivers of FLSA rights—were not undermined by honoring such an agreement. *See id.* at 257.

*Lynn's Food* is consistent with the distinction *Martin* drew between bona fide settlement agreements entered into by counseled disputants and agreements arising out of exploitative, or potentially exploitative, arrangements. There, the DOL initiated an investigation that led it to conclude that the employer, Lynn's Food Stores, Inc. ("Lynn's"), had violated multiple FLSA

provisions, including as to minimum wages and overtime pay. 679 F.2d at 1351. Accordingly, the DOL found that Lynn's was liable to its employees, under the FLSA, for both unpaid wages and liquidated damages. *See* 29 U.S.C. § 216(b); 679 F.2d at 1351. After negotiations with the DOL broke down, Lynn approached its employees unilaterally. 679 F.2d at 1351. Lynn's offered its employees $1,000, to be distributed among them *pro rata*, in exchange for their signing an agreement to waive all future potential FLSA claims against Lynn's. *Id.* Several employees signed the agreement and accepted their *pro rata* share of the $1,000, and waived their back wages claims, which the DOL valued at more than $10,000. *Id.* Lynn's then brought suit in district court to obtain court approval. *Id.*

Affirming the district court's finding that the settlement agreement was invalid, the Eleventh Circuit emphasized that the employees had "seemed unaware that the [DOL] had determined that Lynn's owed them back wages under the FLSA, or that they had any rights at all under the statute." *Id* at 1354. The Eleventh Circuit also noted that there was "no evidence that any of the employees [had] consulted an attorney before signing the agreements." *Id.* In fact, the court noted, "[s]ome of the employees who signed the agreement could not speak English." *Id.* As such, the Eleventh Circuit held, the settlement agreement between Lynn's and its employees reflected "the sort of practices which the FLSA was intended to prohibit." *Id.*

District courts in the Second Circuit have limited *Martin* to pre-litigation settlements. *See Peralta v. Soundview at Glen Cove, Inc.*, 2013 U.S. Dist. LEXIS 70239 at *7 (E.D.N.Y. May 16, 2013); *Files v. Federated Payment Sys. United States,* 2013 U.S. Dist. LEXIS 66413 at *6 (E.D.N.Y. April 2, 2013). In both *Peralta* and *Files*, the employees brought suit before a preclusive settlement agreement had been reached. *See Peralta,* 2013 U.S. Dist. LEXIS 70239 at *7; *Files,* 2013 U.S. Dist. LEXIS 66413 at *6. In each, the court distinguished *Martin* on the

grounds that it involved a valid pre-litigation settlement not triggering the FLSA.  *See Peralta,*
2013 U.S. Dist. LEXIS 70239 at \*7; *Files,* 2013 U.S. Dist. LEXIS 66413 at \*6.  In contrast, in
*Peralta* and *Files*, the settlement invoked by the employer was one the parties had reached, or
ostensibly reached, long "after the commencement of the case."  *Peralta,* 2013 U.S. Dist.
LEXIS 70239 at \*7; *Files,* 2013 U.S. Dist. LEXIS 66413 at \*6.   Similarly, a district court in
Pennsylvania recently distinguished between *Martin* and *Lynn's Food* based on the timing of the
settlement agreement relative to the litigation and ensuing judicial review  *See Kraus v. PA Fit II,*
*LLC,* 155 F. Supp. 3d 516, 528 (E.D. Pa. 2016).  The court in *Kraus* stated that:

> [the] primary difference between the *Lynn's Food* and [*Martin*] standards is the timing of
> the judicial scrutiny.  The Fifth Circuit scrutinized the agreement . . . at some point after
> the parties entered it once a question arose over the settlement's enforceability.  Thus,
> [*Martin*] stands for retrospective scrutiny to determine the agreement's enforceability *ex*
> *post*. . . . In contrast, the *Lynn's Food* standard is applied prospectively to approve the
> agreement *ex ante.*

*Id.*

A key question here, then, is how this case aligns with these precedents.  The Court's
assessment, upon due consideration, is that the circumstances of the agreement here are fairly
analogous to those in *Martin*.  As in *Martin*, the settlement agreement waiving rights under the
FLSA in return for a significant sum of money was entered into entirely outside the context of
litigation, with the employee represented by counsel.  *Martin*, in fact, distinguished *Lynn's Food*
on those grounds, emphasizing that (1) "the dispute in *Lynn's Food Stores* had arisen as a result
of a [DOL] investigation;" (2) the employees in *Lynn's Food* had no idea they were owed wages
pursuant to the FLSA; and (3) the employees never retained an attorney.  *Martin*, 688 F.3d at
n.10.  And, as in *Martin* but unlike in *Lynn's Food*, Gaughan was made aware of her FLSA
rights.  Indeed, her pre-settlement demand letter to Rubenstein, prepared by her counsel, sought
the FLSA remedies of back pay and liquidated damages.  And the significant considertion

obtained by Gaughan further refutes the concern expressed in *Lynn's Food* that the employee relinquishing her FLSA rights have been exploited. Gaughan's demand letter to Rubenstein sought $34,847.04, and, after months of negotiation, she agreed to accept $18,000 in exchange for releasing her claims. Gaughan Aff., Exs. H, R, N; Agreement ¶¶ 1.1, 8.1. Rubenstein also agreed to relinquish any claim she had against Gaughan for unpaid legal fees. Agreement ¶ 1.7. Far from being exploited, the counseled Gaughan thus obtained substantial value.

The Court therefore upholds as consistent with the FLSA Gaughan's pre-litigation settlement agreement with Rubenstein. There is no reason to view that agreement as the product of one-sided bargaining. And to hold otherwise, given the procedural and substantive indicia of fairness present here, would inhibit productive settlements. It would effectively require that any parties, even ably counseled plaintiffs, wishing to settle an FLSA dispute out-of-court without bringing suit, obtain judicial or agency approval for their settlement. The Court is unaware of no charter for imposing such a requirement

### 2.       Duress and Lack of Approval and Communication

In opposing Rubenstein's motion to dismiss based on the settlement agreement, Gaughan claims for the first time that she had been under "duress" when she signed the Agreement. She claims that her counsel, V&A, did not discuss the Agreement with her, and that she yielded to V&A's pressure to sign it because she was needed money. Pl. Br. at 31, 51. She also alleges that after V&A and Rubenstein reached an agreement, V&A relayed the terms to her, and requested that she approve the Agreement "by Friday of this week." Gaughan Aff., Ex. P. Otherwise, she claims, V&A told her that it would return Rubenstein's check and withdraw as her counsel. *Id.*

Even taking these factual allegations as true, they fall short of the showing duress so as to warrant voiding the Agreement. *See, e.g., McIntosh v. Consolidated Edison Co.*, 1999 U.S. Dist.

LEXIS 3264 at *5 (S.D.N.Y. Mar. 16, 1999) (perceived pressure the plaintiff felt from his attorney together with the plaintiff's fragile mental state provided an insufficient basis on which to find duress).  To invalidate a contract on the grounds of duress,

> one of three circumstances must be present: duress by physical compulsion, duress by threat, or duress by undue influence. Duress may not be found merely from the existence of a difficult bargaining position or the pressure of financial circumstances.  To succeed on a theory that an agreement was procured by duress, a plaintiff must show that he was compelled to agree to its terms by way of wrongful and oppressive conduct that precluded the plaintiff from the exercise of his own free will.

*Id.*  Gaughan, however, does not allege facts supporting that V&A placed her under duress.  She does not claim that V&A physically compelled or threatened her to execute the Agreement or engaged in "wrongful and oppressive conduct" that prevented Gaughan from "the exercise of [her] own free will."  Rather, in vague and conclusory fashion, Gaughan states only that "she felt pressured to sign the documents."  Pl. Br. at 31.  And Gaughan's unremarkable correspondence with V&A also reveals no sign of improper compulsion.[3]

*Nall v. Mal-Motels, Inc.*, 723 F.3d 1304 (11th Cir. 2013), on which Gaughan relies for her claim of duress, is inapposite.  To begin with, the *Nall* settlement would have required court or agency approval under *Cheeks* because, at the time the employer and employee attempted to negotiate a settlement, the employee in *Nall* had—unlike Gaughan—already initiated suit.  *Id.* at 1305.  And the facts of *Nall* are a far cry from those here.  The employer in *Nall*, bypassing the employee's attorney, contacted the employee and secured a meeting in which the  employee agreed to release all claims in exchange for a payment of $2,000 to $3,000, far below the sum the employee was then seeking in court.  *Id* at 1305–06.  The employer also coerced the employee,

---

[3] On the contrary, it appears that the deadline for signing recited in V&A's letter to Gaughan was extended, in that the Friday in V&A's letter was January 15, 2016—10 days before Gaughan executed the Agreement.  Gaughan Aff., Ex. P; Agreement ¶ 8.1.

who was in dire financial straits, to sign the agreement without reading it. *Id.* at 1305. Here, in

contrast, Gaughan, acting through counsel, demanded around $35,000 and settled for $18,000

plus a relinquishment of potential counterclaims after a long negotiation period. And, unlike the

*Nall* plaintiff, Gaughan admits understanding that by signing the Agreement and depositing the

$18,000, she was foregoing her right to sue Rubenstein for the FLSA claims at issue. Gaughan

Aff., Ex. R.

      The Court therefore rejects Gaughan's claim of duress because the facts on which it is

based are legally insufficient to show duress.

### 3.      Release Provision of the Agreement

      Gaughan also asserts that the Agreement's release provisoin is overly broad and thus

void. Pl. Br. at 40. She relies on *Martinez v. Gulluoglu LLC*, 2016 U.S. Dist. LEXIS 5366

(S.D.N.Y. Jan. 15, 2016). There, this Court disapproved of an FLSA settlement agreement in

part because the agreement contained an unduly broad release provision. *See Martinez*, 2016

U.S. Dist. LEXIS 5366 at *3–4. But that case, too, is inapposite. It involved a settlement

agreement that required judicial approval after commencement of an FLSA action, requiring

court approval. *See Cheeks,* 796 F.3d 199. In contrast, this approval was executed prior to the

initiation of any litigation. Accordingly, it does not require this Court's approval.

      In any event, the record reveals consideration for a broader release by Gaughan. Apart

from having employed Gaughan, Rubenstein had served as her attorney in divorce proceedings.

Under the Agreement, Rubenstein forewent claims against Gaughan for unpaid legal fees. That

supplied consideration for a release by Gaughan of claims under than under the FLSA.

### B.    The Report

In reviewing a Report and Recommendation, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).  When a party makes specific objections to a magistrate's findings, the district court must make a *de novo* determination as to those findings.  *Id.* § 636(b)(1).  However, if a party "makes only conclusory or general objections, or simply reiterates the original arguments, the Court will review the Report strictly for clear error." *Pinkney v. Progressive Home Health Servs.*, No. 06 Civ. 5023 (LTS) (JCF), 2008 WL 2811816, at *1 (S.D.N.Y. July 21, 2008), *aff'd*, 367 F. App'x 210 (2d Cir. 2010) (summary order).  And, while *pro se* parties are, as always, treated leniently in making objections, their objections to a Report "must be specific and clearly aimed at particular findings." *Id.*

In her Objection, Gaughan objects to three of Judge Parker's recommendations, namely, to deny Gaughan's motion to amend her Complaint to add, against Radwan, (1) a claim for a hostile work environment under NYCHRL, (2) claims for disability discrimination under NYCHRL, NYSHRL, and the ADA, and (3) retaliation claims under NYCHRL and NYSHRL. Gaughan's objections are largely conclusory, and arguably justify review only for clear error, *see id.*  However, out of solicitude for Gaughan, the Court examines these objections under the more generous *de novo* standard.  As to each, the Court finds Gaughan's objections unpersuasive, and adopts Judge Parker's Report in its entirety.

### 1.    NYCHRL Hostile Work Environment Claim

Judge Parker denied Gaughan's motion to add an NYCHRL hostile work environment claim against Radwan.  To establish such a claim, the NYCHRL, unlike federal law, does not require the employer's conduct to have been severe or pervasive; the plaintiff must instead demonstrate that she was treated "less well" than other employees on account of a protected

characteristic. *Williams v. N.Y.C. Hous. Auth.*, 61 A.D.3d 62, 73–78 (1st Dept. 2009). Judge Parker acknowledged the NYCHRL's more lenient standard, but denied Gaughan's hostile environment claims against Radwan because Gaughan, in the TAC, "failed to tie [Radwan's] actions to her gender or any other protected characteristic." Report at 17. The Report explained: "The TAC does not set forth any basis upon which it even could be inferred that Radwan's conduct was motivated by a discriminatory animus." *Id.*

Gaughan objects to this recommendation on multiple grounds, largely based on new factual claims. Gaughan now asserts that Radwan told her that she was "superior" to Gaughan in every way but two: level of physical attractiveness and ability to interpersonally communicate. Objection at 2. Gaughan further now claims that Radwan often "made hostile overtures" toward Gaughan, "grabbed [Gaughan's] personal belongings out of her hands," and instilled discomfort in Gaughan by "dictating . . . [to Gaughan] what to write regarding certain clients['] state of mind when witnessing will signatures." *Id.* Radwan acted this way, Gaughan now contends, while aware that Gaughan was in a vulnerable state as a result of her cancer, her autoimmune disease, and her abusive ex-husband. *Id.*

Gaughan also now claims that Radwan exploited her "physical attributes for [Rubenstein's] and Radwan's personal and business gains," despite knowing that Gaughan had suffered from anorexia and body dysmorphia. *Id.* at 2–3. For example, Radwan had Gaughan call a "male administrative clerk at the Surrogates Court in New York County and ask how to serve papers on an incarcerated individual because [Radwan] believed that the clerk would respond to [Gaughan] because he found her attractive." *Id.* at 5. Radwan also allegedly had Gaughan contact officers at Kings County Surrogate Court—whom Gaughan claims were physically attracted to Gaughan—to discover the marital status and age of a clerk to whom

Radwan was attracted. *Id.* Gaughan also alleges that Radwan once called Gaughan in the middle of the night for several hours to reflect upon an affair Radwan was having. *Id.* at 4.

In her objections, Gaughan asserts that, as to male occupants of the office, Radwan never invaded their personal body spaces, acted aggressively towards them or instilled discomfort in them, or solicited them. *Id* at 3, 5. In contrast, Gaughan now asserts, Radwan often berated Gaughan when she answered the phone by stating, "Lee Rubenstein's office" without mentioning Radwan's name. *Id* at 3. Gaughan alleges that Radwan did not treat Rubenstein's son, who worked in the office as a receptionist, in this manner *Id.* Finally, Gaughan now states, Rubenstein acknowledged Radwan's hostile behavior toward Gaughan, stating that Radwan had subjected Gaughan to Radwan's "angry mood swings." *Id.* at 4.

The Court declines to permit Gaughan to bring this claim against Radwan based on these post-Report factual allegations. Gaughan's proposed Third Amended Complaint ("TAC") had made no claim of discrimination on the basis of gender, or, for that matter, any other protected characteristic. The Court declines to credit these belated factual allegations as a basis to not heed Judge Parker's Report. *See, e.g.*, *Frankel v. N.Y. State Office of Children & Family Servs.*, 2015 U.S. Dist. LEXIS 36390 at *6 (S.D.N.Y. Mar. 23, 2015) (declining to consider an argument "brought for the first time in [the plaintiff's] objections to the [report and recommendation]" because such an argument is "procedurally improper"). On *de novo* review of the Report, the Court finds—substantially for the reasons stated above and in the Report—that Gaughan's claim of a hostile work environment is futile, because the claim fails to allege discrimination based on a protected characteristic. As such, the Court adopts Judge Parker's recommendation, and declines to allow Gaughan to add, in this lawsuit, this claim against Radwan.

###### 2.        Disability Discrimination

A *prima facie* failure-to-accommodate claim under the NYSHRL and NYCHRL requires

a plaintiff to show that: "(1) plaintiff is a person with a disability under the meaning of [the

NYSHRL or NYCHRL]; (2) an employer covered by the statute had notice of his disability; (3)

with reasonable accommodation, plaintiff could perform the essential functions of the job at

issue; and (4) the employer has refused to make such accommodations." *Nieblas-Love v. N.Y.C.*

*Hous. Auth.*, 165 F. Supp. 3d 51, 73 (S.D.N.Y. 2016).

Judge Parker recommended that Gaughan not be permitted to add NYSHRL and

NYCHRL failure-to-accommodate disability discrimination claims against Radwan because "the

TAC is silent as to whether [Gaughan's] alleged disabilities affected her ability to move files in

the office"—a task that was the foundation of Gaughan's disability claims.  Report at 22.  Thus,

the Report stated, Gaughan "failed to plead facts establishing that she required a reasonable

accommodation due to her disabilities in order to carry out the requested task." *Id.*  Furthermore,

the Report noted, the TAC does not allege that Gaughan had requested from Radwan a disability

accommodation or that Gaughan had required a disability accommodation to move files or

boxes. *Id.*  Instead, the TAC asserted only that Radwan had been aware of Gaughan's severe

medical state. *Id.*  Finally, the Report noted, the TAC does not allege that Radwan ever denied

any request for accommodation. *Id.*

As for Gaughan's motion to add an ADA claim against Radwan, Judge Parker denied that

motion because the ADA does not provide for individual liability. *Id.* at 11.

Gaughan now objects to Judge Parker's recommendation that she not be allowed to add

claims of disability discrimination, claiming that Radwan knew of her medical conditions, yet

"shrugged" when Gaughan complained to her regarding Rubenstein's requests that Gaughan

clean out storage units and remove heavy boxes from Rubenstein's office.  Objection at 6.

This objection does not carry the day, because it fails to cure a fatal defect that the Report noted in Gaughan's proposed failure-to-accommodate claims under NYCHRL and NYSHRL, to wit, that Gaughan fails to adequately allege either a request or a need for accommodation from Radwan due to Gaughan's alleged disabilities. On its *de novo* review of the Report, the Court is persuaded—for substantially the reasons set forth above and in the Report—that Gaughan's claims under the NYCHRL, the NYSHRL, and the ADA are futile and that Gaughan should not be permitted to add them here. The Court therefore adopts the Report as to these claims, and denies Gaughan's motion to add failure-to-accommodate claims against Radwan under the NYCHRL, NYSHRL, and the ADA.

### 3.     Retaliation Claims

To state a *prima facie* claim for retaliation under the NYSHRL, a plaintiff must demonstrate: "[i] participation in a protected activity known to defendant; [ii] an employment action disadvantaging the plaintiff; and [iii] a causal connection between the protected activity and the adverse employment action." *Anderson v. Davis Polk & Wardwell LLP* 850 F. Supp. 2d 392, 413 (S.D.N.Y. 2012). Under the NYCHRL, a plaintiff need not show that any employment action was taken against her, but must instead show that, as a result of her engaging in a protected activity, some action was taken that would be reasonably likely to deter her from engaging in the activity again. *Mayers v. Emigrant Bancorp, Inc.*, 796 F, Supp. 2d 434, 446 (S.D.N.Y. 2011).

Judge Parker recommended that Gaughan's motion to add NYSHRL and NYCHRL retaliation claims against Radwan be denied, because, as pled, Gaughan complained to Radwan only about the office's unsanitary condition, and did not complain about any protected activity. Report at 21. Thus, Judge Parker reasoned, "[t]he TAC is unclear as to what [Gaughan's] protected activity was." *Id.* And, Judge Parker reasoned, even if Gaughan could show she had

engaged in a protected activity, Gaughan's claim would fail as a matter of law for failure to adequately allege causation, *id.* at 22:  The TAC does not allege facts to support that Radwan had a motive to retaliate against her, and Gaughan's termination occurred long after Gaughan could have engaged in any conceivable protected activity.  Thus, there is no basis to infer retaliation from the close temporal proximity between protected conduct and an adverse act.  *Id.*

In objecting to these recommendations, Gaughan states that Radwan "would approach [Gaughan] menacingly" when Gaughan resisted requests that made her uncomfortable, such as asking Gaughan to use her feminine attributes for Radwan's personal benefit.  Objection at 8. And to fortify her claim of causation, Gaughan now asserts that "each time [she] complained directly to [Rubenstein] or other tenants in the suite, [her] pay was withheld and as this Court is aware, Radwan never compensated [her]."  *Id.*

Reviewing the issue *de novo*, the Court denies Gaughan's motion to add retaliation claims against Radwan.  Gaughan's objections are ultimately unresponsive to Judge Parker's sound legal conclusions.  They also are largely based on new assertions of fact, improper at this stage.  In any event, Gaughan has failed to allege participation in a protected activity, as defined under NYCHRL, or retaliation in response.  Judge Parker was also correct to note that, for much the same reasons, Gaughan cannot sustain retaliation claims under the FLSA and NYLL.  These claims, too, cannot proceed in the TAC.

### 4.        The Remainder of the Report

With regard to the remainder of Judge Parker's Report, to which Gaughan has not objected, review for "clear error" is appropriate.  *See Ruiz v. Citibank, N.A.*, No. 10 Civ. 5950 (KPF), 2014 WL 4635575, at *2 (S.D.N.Y. Aug. 19, 2014) ("To accept those portions of the report to which no timely objection has been made, a district court need only satisfy itself that

there is no clear error on the face of the record.") (quoting *King v. Greiner*, No. 02 Civ. 5810 (DLC), 2009 WL 2001439, at *4 (S.D.N.Y. July 8, 2009)); *see also, e.g.*, *Wilds v. United Parcel Serv.*, 262 F. Supp. 2d 163, 169 (S.D.N.Y. 2003).

Careful review of Judge Parker's thorough and well-reasoned Report reveals no facial error in its conclusions; therefore, the Report is adopted in its entirety. The Court recognizes that to the extent that the Report permits Gaughan to amend her Complaint to add claims against Rubenstein—against whom the Court has dismissed Gaughan's Complaint entirely based on the settlement agreement—that aspect of the Report is now moot. But, for the reasons set forth in the Report, the Court will allow Gaughan to pursue her claims against Radwan for: (i) unpaid minimum wages; (ii) unpaid overtime wages; (iii) unpaid spread-of-hours compensation; (iv) failure to provide wage notices; and (v) untimely payment of wages.

## CONCLUSION

For the foregoing reasons, the Court (1) dismisses Gaughan's Complaint with prejudice as against Rubenstein, and (2) grants in part, and denies in part, Gaughan's motion to amend the Complaint to add claims against Radwan.

The Court directs the Clerk to terminate the motions pending at docket numbers 11, 13, 20, and 33, and to mail a copy of this decision to plaintiff at the address on file.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: July 11, 2017
       New York, New York